[No. 37971.    Department Two.    July 14, 1966.]

DAVID C. GRAY, *Respondent,* v. C. JAMES ENGLAND *et al.,*
*Defendants,* LAWYERS TITLE INSURANCE
CORPORATION, *Appellant.**

*Croson, Johnson & Wheelon,* by *Robert B. Leslie,* for appellant.

*Raymond A. Reiser,* for respondent.

*Reported in 417 P.2d 357.

HAMILTON, J.—On or about August 12, 1960, C. James England entered into an earnest-money agreement with Edward Broch and Peter Berg, and their wives, whereby England agreed to purchase an apartment building from the Brochs and Bergs. So far as ascertainable, from a rather indistinct photocopy of the agreement, the purchase price was to be $60,000 of which $26,000 was to be paid in cash ($10,000 of which was to be held in escrow for the payment of any outstanding labor or material charges against the property), with the balance to be made up of certain properties to be conveyed to the sellers by England. In contemplation of consummating the purchase and re-modeling the apartment building, England, on September 27, 1960, negotiated interim financing in the amount of $65,000 from J. D. Hone, doing business as Metropolitan Mortgage Company (hereafter referred to as Metropolitan), delivering his note and a mortgage upon the property to be acquired as security.

Subsequently, one William Imhoff and his wife asserted a partnership interest in the apartment building. As a consequence, England commenced a suit in October, 1960, against Berg, Broch, and Imhoff and their wives seeking specific performance of the earnest-money agreement. This suit was apparently settled between the parties on December 2, 1960, by the execution of a handwritten agreement wherein it was agreed that the sellers would deliver their deed to Aurora Escrow Company (hereafter referred to as Aurora) and England would cause to be deposited, with that company, the sum of $16,800 by certified check, together with a letter from his financing agency to the effect that the sum of $10,000 would be available to Lawyers Title Insurance Corporation (hereafter referred to as Lawyers) to permit title clearance. The suit was dismissed with prejudice, and on December 6, 1960, England delivered to Aurora a certified check from Metropolitan together with the required letter concerning the $10,000 and his conveyances to the properties making up the balance of the purchase price. Metropolitan then recorded its mortgage and assigned it to the Bank of California.

Berg, Broch, and Imhoff either would not or could not deliver a satisfactory deed or escrow instructions to Aurora. As a result, Aurora indicated it could not close the transaction and asked to be relieved. Thereupon, Metropolitan by letter dated December 22, 1960, authorized Aurora to transfer the $16,800 to the escrow department of Lawyers. This letter contained a direction to the effect that the funds were to be disbursed by Lawyers only upon delivery to England of title, in fee simple, to the apartment property. Presumably, England authorized a like transfer of the documents held by Aurora. On December 23, 1960, Aurora's check for $16,485[1] and the documents were received and accepted by Lawyers, and steps were commenced toward obtaining appropriate escrow instructions and ultimate closure of the transaction.

In the meantime, during October, 1960, an action had been commenced by respondent, David C. Gray, against Berg, Broch, and Imhoff seeking compensation for work performed upon the apartment building. From this action a writ of garnishment was issued and served upon England and Aurora. On December 8, 1960, England answered the writ setting out the escrow deposit. In consideration of a dismissal of the writ, England, along with Berg, Broch, and Imhoff, on December 21, 1960, executed an "Assignment" to Gray of $2,300 from the $16,485 to be deposited with and held by Lawyers, "to insure satisfaction of a sum alleged to be due" Gray from Berg, Broch, and Imhoff. The assignment was conditioned upon a final determination of the Gray v. Berg, Broch, and Imhoff action (King County Cause No. 557328) favorable to Gray and directed that

> until such determination of the amount due and owing the plaintiff [Gray] by the defendants [Berg, Broch, and Imhoff], said sum ($2300.00) is to remain in the control and custody of Lawyers Title Insurance Corporation; and at such time the amount owing is determined, and only until that time, shall Lawyers Title Insurance Corporation pay to David C. Gray any sums, and only the sum

[1]The difference between the $16,800 deposited with Aurora and the $16,485 transferred to Lawyers apparently represents an authorized reduction to cover Aurora's fees and expenses.

determined to be owed, and the balance over and above the sum determined to be owed David C. Gray from the sum of $2300.00 is then to be paid to the said defendants in said cause of action. Exhibit No. 13.

The document was drafted by England's then attorney. Metropolitan was not specifically notified of the assignment. Gray's attorney, however, by letter enclosing an executed copy of the assignment, forthwith advised Lawyers of the arrangement and asserted a third-party beneficiary interest in the escrow.

Lawyers was unable to complete the escrow and close the real-estate transaction because the sellers could not agree among themselves and submit appropriate documents and escrow instructions. Accordingly, on February 7, 1961, Lawyers, by registered letter, notified England, Berg, Broch, and Imhoff that unless escrow instructions were completed within 10 days Lawyers intended to return all documents and money to whomever such belonged, or, if it could not determine ownership, the money and documents would be deposited in the registry of the court.

Neither cooperation in furnishing escrow instructions nor consent to termination of the purported escrow was forthcoming from the sellers. On February 20, 1961, England, claiming the money on deposit, formally demanded its return to himself or Metropolitan. On the same day, Lawyers notified England, Berg, Broch, and Imhoff that the 10-day period had expired and that it was in the process of terminating the escrow and returning the papers and money in its possession. Further, Lawyers announced that England had furnished it with satisfactory evidence of his right to the funds on deposit. The following day, February 21st, with the authorization of England, Lawyers returned the $16,485 to Metropolitan. However, before doing so, Lawyers obtained an indemnity agreement from England protecting it from any loss arising out of the refund.

No notice of the intended or accomplished termination of the escrow deposit was given to Gray or his attorney by Lawyers, and the record does not indicate that Gray was otherwise advised of the situation. Approximately a year

later, England finally succeeded in consummating the purchase of the apartment building, with Metropolitan acting in an escrow capacity and providing additional financing. Title insurance was obtained from Washington Title Insurance Company upon England's indemnification against any obligation arising out of the Gray v. Berg, Broch, and Imhoff action.

In April, 1963, Gray successfully prosecuted his action to judgment, recovering less than $2,300. During the course of the action, England's then attorney attended as an observer. Following entry of judgment, Gray, through his attorney, made demand upon Lawyers for payment of the judgment from the "assigned" funds. Upon refusal of the demand, Gray commenced this suit against Lawyers and England.

The trial court absolved England's marital community from liability, and entered judgment against Lawyers and against England individually. The trial court predicated its judgment against Lawyers upon the ground that it had breached a duty to notify Gray of the proposed termination of the escrow arrangement and/or to retain the $2,300 pending the outcome of Gray's action. Lawyers appeals.

Lawyers launches a three-pronged attack upon the judgment of the trial court. It contends (a) that the moneys deposited with Lawyers belonged to Metropolitan and England possessed no assignable interest therein, (b) that a true escrow was never established, hence Gray did not acquire any rights under the assignment document, and (c) that Gray has failed to demonstrate damage arising out of Lawyers' return of the money to England and Metropolitan.

We cannot agree with Lawyers that at the time of the assignment in question England had no assignable interest in the money on deposit.

The earnest-money agreement out of which the deposit ultimately arose provided that England was to pay labor and material bills outstanding against the apartment building from moneys to be deposited in escrow. When Metropolitan advanced the money for deposit with Aurora,

verified the availability of $10,000 for settlement of out-standing obligations, and later authorized the transfer to Lawyers, it was obviously doing so upon the strength of the earnest-money agreement and the settlement of England's specific performance suit. Immediately after the advance, Metropolitan filed its mortgage for record, assigned it to the Bank of California, recorded the assignment, and commenced charging England interest on the advance. Metropolitan thus, at the very least, clothed England with apparent authority to deal with the deposit pursuant to the earnest-money agreement. Lawyers, too, seemingly recognized England's proprietary interest in the funds on deposit for it dealt directly with England rather than Metropolitan, notified England not Metropolitan, of the intended termination of the escrow, and recognized England's claim to a refund of the deposit. Under these circumstances, Lawyers cannot now be heard to assert England's interest in the funds was nonexistent at the time of the "assignment."

Lawyers next assert that an escrow was never established and as a result Gray acquired no rights under the assignment document as against Lawyers. Again, we must disagree.

There can be little doubt that the provisions of the earnest-money agreement and the "assignment," coupled with a potential consummation of the real-estate transaction, constituted Gray a third-party creditor beneficiary as between England, Berg, Broch, and Imhoff. Restatement, Contracts §§ 133, 134, 136 (1932). When the real-estate transaction was in fact closed, and Gray's claim against Berg, Broch, and Imhoff was established, Gray unquestionably had enforceable rights against England, the promisor. *Boise Cascade Corp. v. Pence,* 64 Wn.2d 798, 394 P.2d 359 (1964); *Zioncheck v. Hepden,* 144 Wash. 272, 257 Pac. 835 (1927); *Union Machinery & Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183 (1916).

When Lawyers accepted the funds and documents from Aurora it assumed the position of a depositary. It stood as the agent of England until such time as Berg, Broch,

and Imhoff furnished appropriate instructions and documents, and a true escrow came into being. *Lieb v. Webster,* 30 Wn.2d 43, 190 P.2d 701 (1948); *Angell v. Ingram,* 35 Wn.2d 582, 213 P.2d 944, 15 A.L.R.2d 865 (1950). Thus, when Lawyers received a copy of England's unequivocal agreement that, in consideration of the release of a writ of garnishment, $2,300 of the deposit should remain in custody of Lawyers "to insure satisfaction of a sum alleged to be due said David C. Gray" it was put upon notice that a third-party beneficiary had accepted and acted upon an agreement of its principal. Lawyers was also put upon notice that England, its principal, had, so far as Gray was concerned, made it a party to the third-party beneficiary contract. And, when Lawyers, after receiving the agreement, remained silent, it tacitly acquiesced in its role. *Great W. Theatre Equip., Inc. v. M. & E. Theatres, Inc.,* 164 Wash. 557, 3 P.2d 1003 (1931). Lawyers, accordingly, had placed upon it the obligation to notify the third-party creditor beneficiary of the termination of the arrangement. *Hughes v. Gibbs,* 55 Wn.2d 791, 350 P.2d 475 (1960). When Lawyers extinguished the fund without giving reasonable notice to Gray and/or impleading the $2,300, it did so at its peril—the peril being that as a result Gray would lose the security afforded by the fund and the pending and ultimately consummated real-estate transaction.

Lawyers finally contends that Gray did not demonstrate any damage arising from its return of the money to England.

In this respect, the evidence reveals, or it is tacitly conceded, that when Gray's claim was established in 1963 (a) the apartment building involved in the real-estate transaction was encumbered by a mortgage in the sum of $105,000; (b) England had married and was without separate property; and (c) Berg, Broch, and Imhoff had departed the state. Gray was, therefore, left without recourse. Under these circumstances, we find no merit in Lawyers' third contention.

The judgment of the trial court is affirmed.

RosELLINI, C. J., DONWORTH and FINLEY, JJ., and COCH-
RAN, J. Pro Tem., concur.