[No. 20045.   Department One.   January 19, 1927.]

# E. H. Avgerinion, *Respondent*, v. First Guaranty Bank, *Appellant*.[1]

[1] Evidence (92, 130)—Admissions of Agent—Letters.   Where a bank intrusted to an agency the forwarding of money, a letter from the agency stating it had forwarded the money is admissible as the admission of the agent against the principal.

[2] Banks and Banking (29)—Action by Depositors and Others —Evidence—Sufficiency—Repayment.   In an action against a bank for failing to forward money to a foreign bank, plaintiff makes a *prima facie* case by proof that the foreign bank refused to give him credit for the remittance, stating that it had no funds to his credit.

[3] Evidence (139) — Documentary Evidence — Authentication— Letters.   The forwarding of an instrument through the mail is sufficiently established by the evidence of the persons who presented and mailed the same for the plaintiff who signed it and by its return from the party to whom it was addressed with its indorsement thereon.

[4] Evidence (24)—Presumptions—Mailing and Delivery of Mail Matter.   The presumption that a letter addressed to a person with postage thereon fully paid was received, has the force of evidence in the absence of anything to the contrary; and the presumption is fortified by the fact that it was returned through the mail with what purported to be indorsements by the party to whom it was sent.

[5] Banks and Banking (26, 27)—Special Deposits or Contracts —Action by Depositor—Relation Between Bank and Depositor for Collection.   There was a special contract, and not a draft within the meaning of the negotiable instrument act, where it was agreed between the bank and its depositor that, if he would comply with certain conditions, he would receive from a foreign bank a credit of the number of Greek drachmas called for in the instrument.

[6] Damages (76, 77)—Measure of Damages—Breach of Contract —Failure to Forward Money.   Where a bank breached its contract with a depositor to forward to a Greek bank the amount of drachmas of the approximate value of the sum on deposit, the measure of damages is the value of the drachmas at that time and not the depreciated value at the time the suit was commenced.

[1]Reported in 252 Pac. 535.

Appeal from a judgment of the superior court for King county, Kuykendall, J., entered February 15, 1926, upon findings in favor of the plaintiff in an action on contract, tried to the court. Affirmed.

*W. N. Beal,* for appellant.
*Long & Schweppe,* for respondent.

Fullerton, J. — In this action the respondent, Avgerinion, recovered, against the appellant, First Guaranty Bank, a banking concern doing business at Chehalis, in this state, in the sum of two thousand dollars and interest, as for a breach of contract.

The facts giving rise to the controversy are, in substance, these: The respondent is of Greek nationality, and a coal miner by occupation. On August 19, 1919, he had on deposit with the appellant bank a sum of money approximating two thousand dollars, and desired to have a sum equivalent to that amount in Greek drachmas transferred to his account with the National Bank of Greece, Lamia Branch. Being unable to speak the English language with any fluency, he took with him to the bank a countryman as an interpreter, and through the interpreter made known to the bank his wishes. The bank agreed to make the transfer, and the respondent turned over to the bank from his deposit and from cash in his possession the sum of two thousand dollars, plus a commission of twenty dollars, for which the bank issued to him a draft or order, the precise nature of which is not shown in the present record, telling him to forward the instrument to the Greek bank, with instructions directing the bank to deposit the amount of the instrument to his credit. The appellant took the instrument and forwarded it to the Greek bank, with a letter of instructions, in accordance with the directions given him by the appellant bank. Some

two or three months later, the instrument was returned to him by the Greek bank with the information that it had no funds to his credit. He thereupon surrendered the instrument to the appellant bank, and received another in the following form:

"Amount, Drachmas 11,000          No. B. D. 42302.
            "Nov. 12, 1919.
    "This check is *only* payable against advice.
    "On presentation of this check pay to the order of National Bank of Greece (Branch of Lamia) Eleven Thousand Drachmas.
"To National Bank of Greece,
"Branch of Lamia,          First Guaranty Bank
    "Lamia, Greece.          Per E. P. Fitzgerald."

Similar instructions were given him with respect to this instrument that were given him with respect to the former one, and the respondent caused it to be forwarded to the Greek bank with instructions to place the amount thereof to his credit. Some two years later, this instrument was also returned to him with the information that the bank had no funds out of which to make the credit. The instrument, when returned to the respondent, bore on its back in the Greek language a certain cancelled indorsement which a witness at the trial interpreted to mean in English:

"Pay to the order of the Athens Branch of the National Bank of Greece for collection.
    "At Lamia, 24th day of September, 1920.
                "National Bank of Greece,
                "Branch of Lamia, the manager."

Following the words, "Branch of Lamia, the manager," was a name which the witness said he was unable to make out.

The instrument, also, bore certain other indorsements in red ink, which the witness interpreted to mean in English:

"This is sent to us after the correspondence on file, 108868. Initials K. K.

"See Letter from Lamia No. 1439."

On the face of the instrument is a stamp purporting to be that of the National Bank of Greece.

The appellant attempted to forward the credit to the Greek bank, through the agency of the Cunard Steamship Company, Limited. There is, however, in the record a letter from the company stating that the Greek bank was not on their list of paying agencies, and, while they had made every effort to do so, they had not succeeded in having the credit forwarded to the bank. The record shows further that the local bank did not, through any other agency, or of itself, forward to the Greek bank the equivalent in drachmas of the money deposited with it.

On the return to him of the second of the instruments, the respondent demanded of the appellant the money he had deposited with it for the purchase of the credit. This the bank refused, offering, however, to return to him the equivalent in Greek drachmas at the then current rate of exchange. But this the respondent refused to accept, possibly because Greek drachmas had fallen in value, between the dates of the transaction, from a substantial sum to a sum but little more than nominal. This action thereupon followed, with the result we have before indicated.

[1] The appellant first complains that the trial court erred in the admission of evidence. The proofs tending to show that the credit had not been forwarded to the Greek bank, through the agency the appellant selected for that purpose, appear in a letter from that agency. It is argued that this was inadmissible, because incompetent to prove the fact; that the only competent evidence would be that of some officer of the company, who knew the fact, testifying directly to the

fact. But we are not persuaded that the contention is tenable. It is a general rule that, where a principal intrusts the management of his business to an agent, the admissions of the agent with reference to the business is the admission of the principal. *Tacoma & Eastern Lumber Co. v. Field & Co.*, 100 Wash. 79, 170 Pac. 360.

[2] But we think the proofs were sufficient to sustain the judgment without the evidence above mentioned. When the respondent showed that, following the directions of the appellant, he forwarded the instrument by mail to the Greek bank, and further showed that the Greek bank refused to give him the credit in drachmas called for in the instrument and returned the instrument to him, he proved all that he was required to prove to make a *prima facie* case.

[3] But the appellant says that the proofs, by which the respondent sought to establish the fact that he had forwarded the instrument in accordance with the appellant's directions, were not competent to establish the fact. The evidence in this respect is the testimony of the person who performed the service for the respondent. This person testified that, after the respondent received the instrument from the appellant, it was brought to him by the respondent, with the request that he write a letter to the Greek bank instructing the bank to place the amount thereof to the credit of the respondent. That he did write such a letter, and, although the language in which it was framed was his own, wrote it as a letter from the respondent, which the respondent personally signed. He testified that the letter, with the instrument, was enclosed in an envelope directed to the bank, that the postage thereon was fully paid, and that the letter was mailed; that he saw the instrument prior to its mailing

and saw it subsequent to its return to the respondent, and that, prior to its mailing, it bore none of the indorsements above noted, while, after its return, it did bear them. He testified further that the reason given by the Greek bank for failing to give the credit was because, to quote the language of the witness, "they had nothing to sustain it." It seems to us that this was competent testimony to prove the facts sought thereby to be established. All of the matters were within the witness's personal knowledge, and, except as to the contents of the letter received from the Greek bank, there could be no higher degree of evidence. As to the letter, it was shown that it was not preserved, and the loss of the letter justified his testimony as to its contents.

[4] It is said further that there is no competent proof that the instrument was ever received by the Greek bank. But the presumption is that the government mails proceed in due course, and that a letter duly addressed to a person, with the postage thereon fully paid, is received by the person to whom it is addressed. This presumption has the force of evidence, and is sufficient to justify a finding that such is the fact, in the absence of anything to the contrary.

"The rule is well settled that if a letter properly directed is proved to have been put in the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal v. Walker,* 111 U. S. 185.

The indorsements on the instrument also, we think, can be considered in determining whether the respondent complied with the requirements of the appellant with reference to the presentment of the instrument. One such indorsement purports to have been made by

the bank to which the instrument was required to be sent. The presumption is that it is genuine. Standing alone, it might not be very persuasive of the fact, but taken in connection with the other evidence in the case—that it was mailed to the bank without the indorsements upon it, and that it came back with them upon it—the presumption is fortified, and, to our minds, reaches the dignity of substantial evidence.

[5] The appellant further asserts that the provisions of the negotiable instruments act are applicable to the situation, and that the respondent cannot charge it with liability because he did not comply with the provisions of that act. The appellant assumes, in support of this assertion, that the instrument issued to the respondent was the equivalent of an ordinary bank draft; that is to say, a draft issued by a bank to a customer drawn on its correspondent bank directing the correspondent bank to pay to the customer, or his order, a stated sum of money, and argues that, in such a case, there can be no liability on the issuing bank, unless the draft is formally presented to the correspondent bank and payment thereof refused. Were this such a draft as is here indicated, we might agree that there had not been a sufficient presentation to charge the appellant with liability. But we cannot agree that this is a draft of the character assumed. It was not payable to the respondent. He is not even named therein. On its face, it expressly provided that it was payable "only against advice." The draft could be paid to the respondent only after the appellant had provided a fund for its payment, and advised the drawee that the respondent was the person entitled to receive payment. The respondent, by the mere presentation of the draft, could not have received payment upon it. The negotiable instruments act does not meet

a situation of this kind. Its provisions with relation to presentation, protest, and the like, apply to the ordinary draft, not to a situation of this sort.

In our opinion, this was a special contract. The instrument, instead of being an ordinary bank draft, was in the hands of the respondent a mere receipt. It was agreed between the bank and the respondent that, if the respondent would take the instrument and comply with certain agreed conditions, he would receive from the Greek bank a credit for the number of the Greek drachmas called for in the instrument. The proof shows that the respondent complied with these conditions, and further shows that he did not receive the agreed credit. It was the appellant, and not the respondent, who breached the contract, and the appellant must answer for the consequences of the breach.

[6] It remains to inquire what is the measure of the appellant's liability. Without extending the argument, we think it sufficient to say that the respondent is entitled to recover the sum paid the appellant. At the time the contract was entered into, the drachmas called for by the instrument were of the approximate value of the sum so paid. By the appellant's own testimony, they continued to be of the same value for a considerable period of time thereafter. Had the appellant complied with its agreement, the respondent would have received the drachmas at a time when he could have protected himself against loss caused by their decline in value, and it is not to be presumed that he would not have done so. He is thus not now required to receive his money back in depreciated drachmas. When the appellant failed to perform, the respondent was entitled to his money back, not in the equivalent of drachmas at the present time, but of the value they were at the time the breach occurred. To hold other-

wise would be to allow the appellant to profit by its own wrong.

The judgment is affirmed.

TOLMAN, MITCHELL, and MAIN, JJ., concur.