[No. 30370. Department One. March 5, 1948.]

VINCENT T. LIEB et al., *Appellants,* v. CARYL V. WEBSTER, *Defendant,* ROBERT J. KNUTZEN et al., *Respondents.*[1]

*Lee Olwell,* for appellants.

*Wright & Wright,* for respondents.

HILL, J.—The facts in this case are undisputed and are for the most part stipulated. The appellants were in possession of a piece of residential property which they had agreed to

[1]Reported in 190 P. (2d) 701.

purchase from the respondents. The closing of the transaction was being handled through Caryl V. Webster, doing business as Webster Agency, Realtors, as escrow agent. He will hereafter be referred to as Webster.

The appellants deposited in escrow with Webster, on January 16, 1947, $5,358.20, which, together with $650 previously deposited, made a total of $6,008.20. This was the total amount which the appellants were required to pay for the property, over and above an existing mortgage of $6,346.74. The appellants' escrow instructions to Webster were to disburse the funds delivered to him on the following conditions: (a) He was to procure and record conveyance to the appellants; (b) he was to procure assignment to the appellants of FHA reserves in the sum of $104.94; and (c) he was to

". . . procure policy of title insurance in the sum of $............. in the usual form, containing in addition to usual printed exceptions the following liens and encumbrances:

"(1) Conditions, restrictions or reservations as may be contained in the plat or Federal or State patent.

"(2) Matters attaching by, thru or under the grantee. Existing mortgage in the sum of $6,346.74 now in effect upon the above described premises which grantee assumes and agrees to pay according to the terms and conditions thereof."

The respondents deposited in escrow with Webster, on the same date, their statutory warranty deed to the appellants and the assignment of the FHA reserves in the sum of $104.94, which Webster was directed to deliver to the appellants

". . . upon payment or delivery to you [Webster] for my account of Six Thousand Eight and 20/100 Dollars ($6008.20)."

On February 7, 1947, before the transaction was closed, Webster absconded with the escrow funds.

Both parties are agreed that the loss must fall upon the persons who could have recovered the money from Webster at the time he absconded; in other words, upon

the persons as whose agent he was at that time holding the money.

It is apparent that Webster held the money as agent for the appellants when the escrow became effective on January 16, 1947. The question for determination is when, if ever, he ceased to hold it as the appellants' agent and took possession of it as the agent for the respondents. The appellants contend that all the conditions which they attached to the disbursement of the funds had been fulfilled prior to the date that Webster absconded, and that, consequently, Webster was holding the funds for the respondents at that time.

While Webster never recorded the deed to the appellants, the argument in the briefs and before this court has centered around the question of whether Webster ever procured or came into possession of the policy of title insurance. The appellants never received such a policy. There is no direct evidence that Webster ever received it. H. F. Hulet, credit manager of the title insurance company, testified as follows on direct examination:

"Q. Mr. Hulet, when was the title insurance policy sent out? A. The title insurance policy was mailed to the Webster Agency February 5th, 1947."

On cross-examination, he testified:

"Q. Did the post office ever return to you the title insurance policy that was mailed out on February 5th? Did it ever come back? A. Not to my knowledge."

■ From this testimony, the appellants urge that there arises a presumption that the policy of title insurance reached its destination prior to the time that Webster absconded, and it was received by him. The appellants rely upon the presumption as we have stated it in the case of *Avgerinion v. First Guaranty Bank,* 142 Wash. 73, 252 Pac. 535, from which they quote the following:

"It is said further that there is no competent proof that the instrument was ever received by the Greek bank. But the presumption is that the government mails proceed in due course, and that a letter duly addressed to a person, with the postage thereon fully paid, is received by the person to whom it is addressed. This presumption has the

force of evidence, and is sufficient to justify a finding that such is the fact, in the absence of anything to the contrary.

" 'The rule is well settled that if a letter properly directed is proved to have been put in the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.' *Rosenthal v. Walker,* 111 U. S. 185."

It is apparent that this presumption of the receipt of a letter cannot arise in the absence of proof of its proper mailing, and our question narrows down to a consideration of the character and sufficiency of the evidence presented to establish the mailing of the title insurance policy.

The appellants contend that Mr. Hulet's statement that "The title insurance policy was mailed to the Webster Agency February 5th, 1947," is sufficient evidence to show that the title insurance policy was mailed. Our cases do not support that contention. In *Avgerinion v. First Guaranty Bank, supra,* on the question of whether a certain instrument was mailed to a bank in Greece, we discussed the evidence as follows:

"The evidence in this respect is the testimony of the person who performed the service for the respondent. This person testified that, after the respondent received the instrument from the appellant, it was brought to him by the respondent, with the request that he write a letter to the Greek bank instructing the bank to place the amount thereof to the credit of the respondent. That he did write such a letter, and, although the language in which it was framed was his own, wrote it as a letter from the respondent, which the respondent personally signed. He testified that the letter, with the instrument, was enclosed in an envelope directed to the bank, that the postage thereon was fully paid, and that the letter was mailed; that he saw the instrument prior to its mailing and saw it subsequent to its return to the respondent, and that, prior to its mailing, it bore none of the indorsements above noted, while, after its return, it did bear them."

In *Farrow v. Department of Labor & Industries,* 179 Wash. 453, 38 P. (2d) 240, we recognized the rule that, when an office handles such a large volume of business that

no one could be expected to remember any particular notice or letter, proof of mailing may be made by showing (a) an office custom with respect to mailing and (b) compliance with the custom in the specific instance. We there said:

"There can be no question that, if the department had produced a witness who had testified to the deposit in the United States mail on September 9th of the notice, sealed, stamped and properly addressed, the presumption would be effective, and raise an issue of fact to be determined from all the evidence on this issue. But that is not the proof presented in this case. The department sought to prove the fact of mailing by office custom. Obviously, in an office handling as much correspondence as does the department of labor and industries, no one can remember the fact of mailing any particular notice or letter. So the law has become well established in such instances that proof of mailing may be made by showing (a) an office custom with respect to mailing; (b) compliance with the custom in the specific instance. . . .

"The proof here was that the clerk whose duty it was to prepare the notice, address and stamp the envelope, did so on September 9, 1932; that, pursuant to custom, she took all notices prepared by her that day to the room of the mailing clerk whose duty it was to seal the envelopes and deposit them in the mail. The mailing clerk was not produced as a witness. So we have proof of the custom, but not proof of compliance with it. This has uniformly been held to be insufficient to establish proof of mailing. *Gardam & Son v. Batterson*, 198 N. Y. 175, 91 N. E. 371, 139 Am. St. 806; *Peirson-Lathrop Grain Co. v. Barker*, 223 S. W. (Mo. App.) 941; *Goucher v. Carthage Novelty Co.*, 116 Mo. App. 99, 91 S. W. 447; *Mankin v. Parry*, 70 Pa. Super. Ct. 558; *Brailsford v. Williams*, 15 Md. 150, 74 Am. St. 559; *Hetherington v. Kemp*, 4 Campbell's Reports (Eng.) 192."

(The first sentence of the foregoing quotation is commended to the consideration of those who desire a concise statement of the things which should be established by a witness who is testifying from his personal knowledge to a mailing, where it is desired to raise the presumption of receipt by the addressee. We would add the suggestion that it is generally conceded that the presumption is strengthened when the envelope bears a notice requesting that it be returned to the sender if not delivered within a specified

time, if it appears that the letter was never returned. 20 Am. Jur. 198. We do not presume to say that we will insist, in any case, that all the elements set forth in the quoted sentence must be established; they merely represent the well-blazed trail for those who want to be sure that their evidence of mailing is sufficient to raise the presumption here relied upon.)

No attempt was made in this case to prove mailing by showing an office custom and compliance therewith, but sole reliance is placed upon the testimony of Mr. Hulet that "The title insurance policy was mailed to the Webster Agency February 5th, 1947," and on a statement contained in *Building Supplies, Inc. v. Gillingham,* 17 Wn. (2d) 489, 135 P. (2d) 832:

"The general statement of one that he 'mailed' a letter to another is *prima facie* evidence that he did all of the things incident thereto."

In the *Building Supplies* case, *supra,* no mention was made of the presumption of delivery, and that case has no application to the case at bar. We were there considering a section of our lien statute providing that materialmen, under certain circumstances, "shall . . . mail to the owner . . . a notice in writing." Rem. Rev. Stat., § 1133 [P.P.C. § 180-3]. The statement relied upon goes no further than to say that, under that statute, if a witness testifies in practically the statutory language that he mailed the notice, his testimony is *prima facie* evidence that the statute was complied with. This statement, incidentally, was not necessary to a decision of the case, as the record shows that the person who had done the mailing testified that she had addressed the envelope, placed the notice in question in the envelope, that the envelope was stamped, and that she made a special point of mailing it at the post office.

We would further point out that Mr. Hulet's testimony does not come within the purview of the statement relied upon, as Mr. Hulet did not testify that he mailed the title insurance policy; he testified that the title insurance policy was mailed. The trial judge, who was in a better position than we are to determine what Mr. Hulet meant, had the

very definite impression that Mr. Hulet was testifying from his records rather than from his personal knowledge. The trial judge quotes verbatim the testimony relied upon, and then says:

"Now, there is not the slightest bit of evidence to warrant the statement that he, Hulet, mailed out this title insurance policy.

"I have given you the exact language used and the exact phraseology, and he did not say that he himself mailed it out; he didn't say that it was deposited in the usual course in the mail; that it had stamps or postage on, or anything else. And that is the exact phraseology used in this case [*Avgerinion v. First Guaranty Bank*] in 142 Wash. And he said, 'Not to my knowledge.' "

Again, the trial court says:

"But there isn't any evidence, direct evidence, that it was not even ever returned. He said not to his knowledge."

We hold, with the trial court, that there is no presumption that Webster or the Webster Agency received the title insurance policy required by the escrow instructions, because there is not sufficient evidence to establish the mailing.

However, there are at least two other ways in which it seems to us that the appellants' escrow instructions were not complied with or that proof of performance thereof was lacking:

(1) No copy of the policy of title insurance was placed in evidence. The escrow instructions called for a policy of title insurance in the usual form and "containing in addition to usual printed exceptions the following liens and encumbrances: . . ." There is no evidence concerning the form of this policy of title insurance, except that there was no change in title from that shown in the title report. The one-page title report is far from being a policy of title insurance "in the usual form," with the exceptions referred to in the instructions.

(2) The escrow instructions set forth above required that the escrow agent procure and record a conveyance to the appellants. It is conceded that the conveyance was actually delivered to Webster by the respondents and was in his

possession as escrow agent; but it is also conceded that it was not recorded. The appellants take the position that the requirement of recording the conveyance before the funds deposited by the appellants were disbursed to the respondents, was impossible of performance because the respondents had provided, in their escrow instructions, that there should be no delivery of the deed except

" . . . upon payment or delivery to you [Webster] for my account of Six Thousand Eight and 20/100 · Dollars ($6008.20)."

■■ The appellants' argument apparently proceeds upon the theory that delivery must precede recording, but that is not the law. The escrow agent could have recorded the deed without delivering it, and thereafter delivered it to himself as agent for the appellants and received the funds on behalf of the respondents simultaneously. It is true that a presumption of delivery arises from a recording. *In re Brickey's Estate*, 157 Wash. 532, 289 Pac. 1015. But that presumption is not conclusive and may be rebutted. 16 Am. Jur. 663. There is no basis for the contention that the requirement of recording in the escrow instructions could not be complied with.

■ That Webster held the sum of $6,008.20 as agent of the appellants on January 16, 1947, when the escrow instructions were signed, is not disputed, and there is no evidence before us from which we can say that he ever ceased to hold it in that capacity. The loss, therefore, must fall upon the appellants.

This is one of those unfortunate cases in which one party or the other must sustain a heavy loss by reason of misplaced confidence in a third party. Counsel for both parties urge the desirability of more adequate safeguards surrounding the handling of escrow or trust funds; however, that is a legislative problem.

The judgment of the trial court is affirmed.

MALLERY, C. J., MILLARD, SIMPSON, and SCHWELLENBACH, JJ., concur.