[No. 31065.   Department Two.   January 30, 1950.]

CAROLINE B. ANGELL, *Respondent*, v. HAROLD INGRAM *et al.*,
*Appellants.*[1]

[1]Reported in 213 P. (2d) 944.

*Karr, Tuttle & Campbell,* for appellants.

*Groff & Kelleran, William A. Herren,* and *Frank Harring-ton,* for respondent.

HILL, J.—We again have a case where one of two innocent parties must sustain a loss because of the defalcation of an escrow holder. The situation is similar to that in *Lieb v. Webster,* 30 Wn. (2d) 43, 190 P. (2d) 701, and the escrow holder was the same.

The parties agree that the rule laid down in *Lieb v. Webster, supra,* is the one which must be applied, *i.e.,* when an escrow agent absconds with money he is holding in escrow, the loss must fall upon the person as whose agent he is holding the money at that time.

The material facts are that on September 4, 1946, an earnest-money receipt was executed whereby Harold Ingram and Bernadine Ingram, his wife, agreed to purchase and Caroline B. Angell agreed to sell certain residence property for $6,450. Two hundred dollars was paid as earnest money and nineteen hundred dollars additional was to be paid upon the proof of good title and delivery of a real-estate contract in the sum of $4,350, payable forty-five dollars or more a month.

Mrs. Angell had inherited the property from her father and mother, and the administration of their estates had not been completed and the decree of distribution therein could not be entered for several months. To enable the Ingrams to have immediate possession of the property, the additional nineteen hundred dollars, two copies of the executed con-

tract, and a warranty deed were placed in escrow with C. V. Webster.

Before the decree of distribution was entered and on or about February 6, 1947, Webster absconded. In his escrow files were found the earnest-money receipt referred to; *one* executed copy of the real-estate contract (dated September 6, 1946, and acknowledged September 10, 1946) whereby Mrs. Angell agreed to sell and the Ingrams agreed to buy the property on the terms outlined in the earnest-money receipt; a statutory warranty deed from Mrs. Angell to the Ingrams; and two sets of escrow instructions, one being the instructions of Mrs. Angell, the other being those of the Ingrams. These were not joint, but entirely separate, instructions.

Mrs. Angell's escrow instructions stated that a statutory warranty deed and *two* copies of the real-estate contract were delivered therewith to the escrowee, the deed to be placed in escrow in the bank of her choice on the date of the final closing and the real-estate contract to be held

". . . in escrow until such time as Washington Title Insurance Company shall issue a policy showing title vested in me, free and clear of all encumbrances. At that time and upon delivery to you for my account, the sum of Twenty-One Hundred Dollars ($2100.00) you will deliver *one* copy of said real estate contract to the purchasers and *one* copy to myself." (Italics ours.)

The Ingrams' escrow instructions stated that twenty-one hundred dollars was handed to the escrowee, which he was authorized to pay to the order of the seller when he, the escrowee, had for the Ingrams' account a statutory warranty deed (to be delivered to the bank of the grantor's choosing) and an executed contract of sale,

"Together with purchasers title insurance policy on the usual form insuring us as purchasers in the sum of $6450, and showing title vested in Caroline B. Angell, free and clear of all encumbrances. . . ."

The execution of these various instruments by the parties and their receipt by Webster (except for one copy of the contract) is conceded. He had only one copy of the con-

tract in his possession because Mr. Ingram had acquired possession of the other copy, but not from Webster.

The trial court held that Webster, at the time he absconded, was holding the money as the agent of the Ingrams and had no authority to deliver it to Mrs. Angell until the conditions set out in the Ingrams' escrow instructions had been complied with, *i.e.*, until the policy of title insurance showing title in Mrs. Angell was delivered to Webster for the Ingrams. It was the trial court's view that the situation as between the purchasers and the seller was exactly the same as in *Lieb v. Webster, supra.* The Ingrams have appealed.

In their efforts to distinguish this case from *Lieb v. Webster, supra,* the appellants urge that: (1) There was no valid escrow agreement; (2) if there was a valid escrow agreement, the terms were sufficiently completed by (a) the delivery of the contract to the appellants and (b) the payment by the escrowee of commissions to the real-estate agents, so that further performance was waived, thereby entitling the respondent to receive the money held by the escrow holder without waiting for title insurance to be issued.

The argument to establish the invalidity of the escrow agreement is based upon the first two and one-half lines of the seller's escrow instructions as heretofore quoted. Appellants argue that this leaves the seller in a position where, by failing to have a decree of distribution entered in the estate proceedings, or by failing to order title insurance, she could prevent the conditions from ever being fulfilled; and, since she could thus make impossible the delivery of the contract, she never parted with control of it; and, hence, there was no valid escrow. The argument then is that Webster, in negotiating the sale of the property, was acting as the seller's agent and, unless that relationship was changed by a valid escrow agreement, he received and held the money as the agent of the seller rather than as the agent of the purchasers.

Assuming, but not deciding, that appellants' contention as to the invalidity of the escrow agreement is correct, we cannot follow appellants' arguments as to the consequences, *i.e.*, that the delivery of the money to Webster by the appellants constituted a payment to the agent of the seller. Whether or not the escrow was valid, Webster received the nineteen hundred dollars as the agent of the purchasers under specific instructions to deliver it to the seller only on the performance of certain conditions. The fact that Webster was the agent of the seller in negotiating the sale could not prevent the purchasers from making him their agent for the purpose of making payment when certain conditions were performed, and he was their agent for that purpose regardless of whether Mrs. Angell had ever signed any escrow instructions. Those conditions had not been performed at the time Webster absconded, and he still held the money as the agent of the purchasers.

The second phase of the appellants' attempted distinction of *Lieb v. Webster, supra,* is that, since they had secured possession of a signed copy of the contract which they were not supposed to have until the seller became entitled to the money in the escrowee's possession, and since the escrowee had paid the commissions of the real-estate dealers from the funds he held as the agent for the purchasers and later so informed the seller, there had been a waiver of the escrow instructions by both parties.

■ When the payment of the real-estate commission was made from the Ingrams' money in the possession of the escrowee, it was made in violation of the terms of their instructions; and, had Webster not absconded and had the seller been unable to secure title insurance, the entire sum of twenty-one hundred dollars would have had to be returned to the Ingrams. There is no showing that the Ingrams knew of, consented to, or approved of that payment from their funds. The seller was bound to pay the real-estate commission in any event, because it had been earned, and she concedes that the money was used to pay her obligation and that she is indebted to the appellants in that

amount. There is nothing in that incident to constitute a waiver by the purchasers of their instructions that the money delivered to Webster, whether or not he was an escrowee, should be paid to the seller, the other conditions being met, on the delivery of a policy of title insurance.

▮ The fact that the purchasers had secured possession of an executed copy of the real-estate contract on September 10, 1946, from a real-estate man who participated in the transaction, although they knew they were not entitled to have it under the escrow provisions until such time as the seller should be entitled to receive the twenty-one hundred dollars, does not establish that they had waived their own instructions and that the escrowee thereafter held the money for the seller. The general rule as to unauthorized delivery by an escrowee is

". . . that where an instrument placed in escrow is thereafter delivered by the escrow holder in violation of, or without compliance with, the terms or conditions of the escrow agreement, such attempted delivery is inoperative and no title or rights pass by virtue of the second tradition, for the reason that in legal contemplation there has been no effective delivery." (19 Am. Jur. 439, Escrow, § 21);

and as to "Wrongful Procurement of Instrument" by one of the parties, the rule is

". . . that if there is a fraudulent or tortious procurement of the instrument in escrow, it is inoperative to pass title or otherwise make complete rights which would accrue upon proper and lawful compliance with the conditions of the escrow." 19 Am. Jur. 441, Escrow, § 22.

▮ If the seller in an escrow agreement desires to ratify the wrongful delivery to, or wrongful procurement of an instrument by, the purchaser, he may do so, in which event the person who wrongfully acquired possession of the instrument is frequently estopped to deny the effectiveness and the consequences of the delivery. 19 Am. Jur. 443, Escrow, § 24.

The purchasers here seek to take advantage of their own wrongful procurement of the contract, and assert that they should be estopped thereby to deny the delivery of

the contract, and that, because they took the contract without the knowledge of the seller, the seller became entitled to the money despite the purchasers' written instructions to their agent not to pay the money until a policy of title insurance had been received. This argument might come with some propriety from the seller, but the purchasers here are in no position to dictate to the seller what her position should be. The seller in this case did not know of or ratify the delivery of the contract to the purchasers; she did not sue on the contract, or to cancel it, but brought her action to cancel the earnest-money receipt, taking the position that there had been no delivery of the contract.

The purchasers not having succeeded in distinguishing this case from *Lieb v. Webster, supra,* the trial court correctly applied the rule of that case. The trial court adequately protected the interests of the purchasers by giving them an opportunity to pay, within sixty days from the entry of the decree, an amount equal to the total amount they had entrusted to Webster less the payments he had made for the benefit of the seller. That period has passed during the appeal; and the cause should be remanded to the superior court with instructions to make such changes in its decree of February 24, 1949, as will enable the appellants to protect any interest they may have in the property by making the requisite payment within thirty days after the entry of the judgment upon the remittitur, and providing, as in the decree of February 24, 1949, that all of the purchasers' interest in the property shall be forfeited and title thereto be quieted against all claims on their part unless such payment is made.

The judgment is affirmed in substance, and the cause is remanded to the trial court with instructions to make the necessary changes in the decree therein due to the lapse of time during the appeal.

SIMPSON, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.