**In re UNITED HOME LOANS, INC., Debtor.**

**Robert STEINBERG, Trustee for the bankrupt estate of United Home Loans, Inc., Plaintiff,**

**v.**

**Vivian S. McGINNIS, Beatrice J. Larsen, Carma and Anthony Boydston, Border Brokerage, Inc. Profit Sharing Plan, Russell O. and Sylvia Jones, Lonnie Watson, Diane Brown and La Tanya Watson, Defendants.**

**No. C86–1686D.**

United States District Court, W.D. Washington.

March 27, 1987.

Norman Winn, Smith, Brucker, Winn & Ehlert, Seattle, Wash., for R. Jones & S. Jones.

John Schultz, Bannister, Bruhn & Clark, Mount Vernon, Wash., for Border Brokerage Inc. Profit Sharing Plan.

Michele R. Hankins, Ryan, Swanson & Cleveland, Seattle, Wash., for R. Steinberg, trustee.

David S. Kerruish, Robert E. Ordal, Seattle, Wash., for Vivian McGinnis.

Daniel M. Caine, Merkel, Caine, Jory, Donohue & Duvall, Seattle, Wash., for Beatrice J. Larsen.

Enoch Maffeo, Renton, Wash., for Carma Boydston & Anthony Boydston.

Lonnie Watson, L. Tanya Watson and Diane Brown, pro se.

## ORDER

DIMMICK, District Judge.

THIS MATTER comes before the Court on appeal from a final Order and Judgment by the Honorable Thomas T. Glover, United States Bankruptcy Judge for the Western District of Washington. Jurisdiction over this appeal is granted under 28 U.S.C. § 158(a). For the reasons set out below, this Court reverses the bankruptcy court's Order and Judgment in this interpleader action involving conflicting ownership claims to a promissory note and deed of trust.

The Order and Judgment appealed from was in the nature of a summary judgment under Fed.R.Civ.P. 56. Apparently because there were no genuine issues of material fact, the bankruptcy court did not make any specific findings of fact. Basic agreed facts formed the basis of the bank-

ruptcy court's decision, and these facts are not in dispute on appeal.

## STATEMENT OF FACTS

United Home Loans, Inc. ("United") is the debtor in the underlying bankruptcy proceeding. Its trustee in bankruptcy commenced this action in bankruptcy for interpleader of specific documents held by United. Among these documents were a promissory note, a deed of trust securing the note and three forms of assignment of the deed of trust and note.

These documents were part of a transaction involving the parties to this appeal and relate to a loan of $30,000 made to a group of three individuals named Lonnie Watson, Diane Brown and Latanya Watson (defendants below, but not parties to this appeal, hereinafter referred to as "Watson"). Sometime before January 1983, Watson contacted United about the possibility of getting a loan. United was then in the business of brokering loans secured by deeds of trust on real property. Among other services, United matched borrowers with investors and served as a depository of the purchase monies and loan documents.

The original investors in the Watson loan included appellees Vivian McGinnis ("McGinnis"), Beatrice Larsen ("Larsen") and Anthony and Carma Boydston ("Boydston"), as well as payees Robert and Nina Church, whose 10 percent interest in the Watson loan is not involved in this appeal. In January 1983, these investors agreed to invest $30,000 in the Watson loan. United processed the loan and acted as depository of the funds and loan documents. The transaction was evidenced by a promissory note made payable to all of the investors and was secured by a deed of trust executed by Watson. McGinnis had an undivided 50 percent interest, Boydston an undivided 23.33 percent interest and Larsen an undivided 16.67 percent interest in the note and deed of trust. The note provided for interest only payments for three years, with the original principle payable on February 1, 1986.

Prior to the maturity date of the note, United, on behalf of Watson, asked the appellees if they would be willing to extend the note for an additional period of time. In January 1986, they advised United that they were not willing to do so and that they wished to be paid their investment upon maturity. Watson, however, did not want to pay off the note at maturity and apparently asked United to obtain new investors to whom the note and deed of trust could be transferred, thereby permitting Watson to extend the note and pay off the appellees.

United sent an extension agreement to Watson which they executed on January 28, 1986, four days before the original note matured. The extension agreement indicated that Watson's loan would be extended for an additional three-year term, and that all other terms of the original note would apply, except that the interest rate would be reduced from 12.5 percent to 12 percent. The appellees were not parties to this agreement.

United apparently advertised in various media that investors could obtain a high rate of return secured by deeds of trust on real property. When appellants Russell and Sylvia Jones ("Jones") and Border Brokerage, Inc. Profit Sharing Plan ("Border Brokerage") contacted United, they were given a "Specific Offering Circular" which described the investment as a participation unit in the Watson loan with a promissory note as the debt instrument and a deed of trust as security.

On February 10, 1986, appellant Jones deposited $6,999.97 with United, and appellant Border Brokerage similarly deposited $14,991.91 (with a $4,999.40 balance due). By receipt dated the same day, United acknowledged these deposits and indicated that with them Jones had obtained an undivided 23.33 percent interest and Border Brokerage had obtained an undivided 66.67 percent interest in the Watson loan. By separate letters to Jones and Border Brokerage, also dated February 10, United thanked the appellants for their purchases of interests in the Watson loan and stated that the purchases were transfers of previ-

ous investors' interests. In addition, the letter to Border Brokerage stated that it would receive a recorded assignment of the previous investors' interest. The letter to Jones made no mention of an assignment.

On February 20, 1986, 19 days after the original note matured, United sent letters to appellees McGinnis, Boydston and Larsen. All three letters apparently stated that the appellees' respective interests in the Watson loan were being assigned to other investors and that their original investment monies would be available to them upon the recording of the assignments. Each letter enclosed a document entitled "Assignment of Deed of Trust." The assignment sent to Boydston named Jones as assignee of Boydston's 23.33 percent interest in the Watson loan. The assignments sent to McGinnis and Larsen named Border Brokerage as assignee of McGinnis' 50 percent interest and Larsen's 16.67 percent interest in the Watson loan. While the promissory note was never separately endorsed by any of the appellees, each of the three assignments stated that it transferred the assignor's interest in the deed of trust "[t]ogether with note or notes therein described or referred to."

Boydston, Larsen and McGinnis signed and returned the assignments to United sometime after February 20, 1986. The assignments were never recorded, and apparently because of United's financial difficulties, the appellees were never repaid their original investment monies. United also never delivered to the appellants the deed of trust, promissory note or assignments.

Because of the conflicting claims by the parties to these documents, the trustee for United filed this interpleader action. In its Order and Judgment, the bankruptcy court ruled that appellants Jones and Border Brokerage had no interest in the promissory note or deed of trust. The bankruptcy court, apparently regarding this matter as a real estate transaction governed by Washington real estate law of notes and mortgages, declared that the assignments were void and of no force or effect and that the promissory note and deed of trust were to be distributed to appellees.

## STANDARD OF REVIEW

In an appeal from a bankruptcy court's decision, a district court applies two different standards of review: one for findings of fact; the other for conclusions of law. *In re Tesmetges*, 47 B.R. 385, 388 (S.D.N.Y.1984). The district court is bound to accept the bankruptcy judge's factual findings unless they can be found to be clearly erroneous. *Id.; Prudential Credit Services v. Hill*, 14 B.R. 249, 250 (S.D.Miss.1981). The burden of establishing a clearly erroneous determination by the bankruptcy judge is a stringent one; to be convinced, the court must be left with a definite and firm conviction that a mistake has been committed. *Prudential Credit Services*, 14 B.R. at 249.

As for conclusions of law, the district court must independently determine the accuracy of the ultimate legal conclusions adopted by the bankruptcy judge on the basis of the facts shown. *Id.* at 251. Accordingly, this Court reviews the bankruptcy judge's conclusions of law de novo. *In re Gullifor*, 47 B.R. 450, 451 (E.D.Mich.1985).

## ANALYSIS

Appellees argue that under Washington real estate law of notes and mortgages, the transaction between the parties here is void. Although the appellees each signed and delivered an assignment of deed of trust which by its terms transferred their interests in the deed of trust "[t]ogether with note or notes therein described or referred to" to the appellants, the appellees never endorsed the promissory note itself. Appellees argue that the note is payable to order, and under Washington law dealing with commercial paper, the note can be negotiated only by delivery with the necessary endorsement. *See* RCW 62A.3-202(1). They argue that unlike the assignment here, the endorsement must be written on the instrument itself or upon a paper so firmly affixed thereto as to become a part thereof. *See* RCW 62A.3-202(2). Appel-

lees further argue that a deed of trust is, in effect, a mortgage and that a mortgage may not be transferred apart from the debt it secures. *See* RCW 61.24.020; 59 C.J.S. *Mortgages* § 359 (1949). Appellees conclude that the assignment of the deed of trust without negotiation of the underlying promissory note by endorsement is a nullity.

■ Appellees' argument fails. A deed of trust is in effect a mortgage for purposes of this transaction. *See* RCW 61.24.-020. A mortgage is transferable by assignment. *See* RCW 61.16.010. Where, as here, an assignment of a mortgage also mentions that the debt is being transferred, the transfer of both is complete.[1]

The appellees' argument confuses a completed assignment with a negotiation. An assignment of a deed of trust which also acts to assign the note will transfer both as between the assignor and assignee, but it will not result in negotiation where the note is negotiable and there is no endorsement of the note. The transferee who takes by these means will not be a holder in due course. However, holder in due course status does not affect the rights as between assignee and assignor. As to them, the transfer is complete. *See* G.S. Nelson & D.A. Whitman, *Real Estate Finance Law*, at 363–64, 366–67 (2d ed. 1985).

Here, the record indicates that the parties to this appeal, as well as United and Watson, intended the assignment of the deed of trust, which by its terms also assigned the note, to effectively transfer both the deed of trust and the note. Accordingly, endorsement of the promissory note was not required to effectively transfer it.

■ Moreover, appellants were bona fide purchasers for value of the deed of trust and note.[2] A party who advances funds in exchange for a mortgage and who has no knowledge of any improper conduct by the mortgage broker is a bona fide purchaser for value. *Glaser v. Holdorf*, 56 Wash.2d 204, 352 P.2d 212 (1960). Here, the appellants advanced funds in exchange for the assignment of the deed of trust. The record is devoid of any evidence that they had knowledge of any fraudulent or improper actions by United in extending the note or otherwise.

■ Appellants' bona fide purchaser status forecloses equity intervention into the enforceability of the assignments of the deed of trust and note. *Miebach*, 102 Wash.2d at 177, 685 P.2d 1074. However, even if appellants were not bona fide purchasers for value, enforcement of the assignments here would not be inequitable because the record does not establish that United acted improperly in extending the note. Apparently, the appellees consented to the extension by later agreeing to assign their interests rather than insisting that they be paid their obligation according to its terms. Appellees' acts of assignment can be construed as a waiver of their rights under their original investment that estops them from now asserting these rights here.[3] In any event, equity intervention is inappropriate in this case.

■ The appellees contend that the ultimate question in this case is one of agency. The agency question in this case is when, if ever, did United cease to hold the money deposited by appellants as their agent and

1. *Geffen v. Paletz*, 312 Mass. 48, 43 N.E.2d 133 (1942); 59 C.J.S. *Mortgages* § 359 (1949) ("[w]here there is something to indicate that such was the intention of the parties, an assignment of a mortgage will carry the debt with it, as where the assignment purports to assign the mortgage note"); G.S. Nelson & D.A. Whitman, *Real Estate Finance Law*, at 366 (2d ed. 1985) ("[i]f the 'assignment' also mentions that the debt is being transferred ... the transfer is unquestionably complete").

2. As stated by the Washington Supreme Court: A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration. *Miebach v. Colasurdo*, 102 Wash.2d 170, 175, 685 P.2d 1074 (1984).

3. The doctrines of waiver and estoppel are set out in *PUD of Lewis County v. WPPSS*, 104 Wash.2d 353, 365, 705 P.2d 1195 (1985). Here, the facts on record invoke the waiver doctrine, and possibly the estoppel doctrine as well, as to any claim by the appellees that the note was wrongly extended or was otherwise in default.

take possession of it as agent for appellees? Appellees rely on two cases for their proposition that United held the money as the agent of appellants, and therefore they must bear the loss. *Angell v. Ingram*, 35 Wash.2d 582, 213 P.2d 944 (1950); *Lieb v. Webster*, 30 Wash.2d 43, 190 P.2d 701 (1948). Both cases involved conditional escrow agreements which conditions were not fulfilled at the time the escrow agents absconded with the monies. In each case, the court held that escrow was not completed and therefore the escrow agent was the agent of the purchasers, who must bear the loss. Appellees make a similar argument here. Although there was no written escrow agreement, appellees assert that United imposed two escrow conditions on behalf of appellants: (1) appellees had to sign and return the assignments to United; and (2) the assignments had to be recorded.

The first condition was clearly met and is therefore not an issue, except arguably to show that United was the agent of appellants at the time they deposited the funds. The second asserted condition refers to a letter from United to appellee Larsen which states: "Your investment monies will be available to you upon recording of the enclosed 'Assignment of Deed of Trust'." [4] Since the assignments were never recorded, appellees assert they were not at any time entitled to receive the money held in escrow by United, and until they were entitled to receive the money, appellants were not entitled to delivery of the assignments. Finally, appellees argue that appellants have the burden of proof to establish that monies were available to pay appellees, and if this is not shown, appellants are not entitled to delivery of the assignments.

The cases relied upon by appellees are distinguishable from the instant case. Both *Angell* and *Lieb* turned chiefly upon the circumstances that the terms of the escrow instructions given by the purchasers to the escrow agent had not been complied with at the time the agent absconded with the funds deposited with him. *Angell*

and *Lieb* are distinguishable from the present case because here there were no formal escrow instructions among the parties and United. This is not a case where formal escrow conditions were not fulfilled.

Nevertheless, a valid escrow was created here among the parties and United. An escrow is created "[w]here a written instrument, importing a legal obligation, is deposited by a grantor with a third party, to be kept by the depository until the grantee pays a stipulated sum, and then to be delivered over to the grantee." *Lechner v. Halling*, 35 Wash.2d 903, 913, 216 P.2d 179 (1950). Additionally, the parties use of the word "escrow" indicates their intention that their transaction be in fact an escrow. *Id.* Here, the record clearly indicates that the parties intended United to act as escrow agent in completing their transaction. Although there were no formal escrow instructions or conditions, the parties clearly intended that United would act as depository of the money and the assignments. Further, the record is replete with references by both parties describing their transaction as an escrow.

From the record here, *Lechner* controls the agency question in this case. *Lechner* stands for the proposition that where the evidence sustains the inference that the parties intended the escrow agent to have authority to receive all papers necessary to give title to the purchaser on the one hand, and to accept all money on the other, that deposits under such an understanding create a valid escrow effecting a completed transfer between grantor and grantee. *Id.* at 915–16, 216 P.2d 179.

Such is the case here. The parties intended United to act as escrow agent in completing their transaction. Although there were no formal escrow conditions, the parties clearly intended that United would act as depository of the purchase money and the documents. Both parties and United understood and intended that delivery to United of the assignments would complete the escrow.

---

**4.** Although the record is not specific on this point, apparently letters from United to appellees Boydston and McGinnis contained similar statements.

Under *Lechner*, United ceased to hold the money deposited by appellants as their agent and took possession of it as agent for appellees as of the date of delivery of the assignments to United.[5] As of this date, the parties had done everything necessary to complete the transaction. The fact that the money was withheld from appellees by United did not make it any less theirs, and in any case, was no concern of the appellants, who had parted with all their right to it. *See Lechner*, 35 Wash.2d at 919, 216 P.2d 179.

■ Recording the assignments was not a condition of escrow imposed by either party. Rather, it appears from the record to be merely a procedure mentioned by United in a letter to at least one of the appellees. It had no legal effect on the transfer of the assignments. An assignment of a deed of trust and note is valid between the parties whether or not the assignment is ever recorded. *Seattle Renton Lumber Co. v. United States*, 135 F.2d 989 (9th Cir.1943). Recording of the assignments is for the benefit of third parties; it has no bearing on the rights as between assignor and assignee.

Appellees' burden of proof argument fails. This Court is not required to speculate as to what happened to the funds after they were delivered to United. The record indicates that both parties did everything necessary under Washington real estate law of notes and mortgages in order to complete the transaction.

Finally, the parties raised the issue of whether this transaction constitutes a securities transaction and is therefore governed by Washington securities law. This Court, however, finds it unnecessary to reach this issue. Appellees have asserted vigorously that Washington real estate law of notes and mortgages governs here. Under this law as set out above, appellants prevail. Consequently, this Court need not address appellants' arguments that they also prevail under Washington securities law.

**CONCLUSION**

This is a completed transaction under Washington real estate law of notes and mortgages. Accordingly, appellants are the owners of the note and deed of trust.

THEREFORE, this Court ORDERS: (1) that the final Order and Judgment of the bankruptcy court is REVERSED; (2) that appellees McGinnis, Larsen and Boydston have no right, title or interest in the note, deed of trust or any portion of United Home Loan's Loan No. B–960; and (3) that the original documents concerning United Home Loan's Loan No. B–960, including the note, deed of trust and assignments of the deed of trust and note, shall be released to appellants Jones and Border Brokerage upon payment of $100.00 to the trustee or the trustee's attorney.

---

5.  Once deposited in escrow, an instrument passes beyond the control of the depositor, and he may not recall it. [Citation omitted.] Upon the performance of the condition named the depository must deliver it to the grantee.
*Lechner v. Halling*, 35 Wash.2d 903, 912, 216 P.2d 179 (1950):