**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| TANG REAL ESTATE INVESTMENTS, CORP., <br><br> Appellant, <br><br> v. <br><br> ESCROW SERVICES OF WASHINGTON, a Washington limited liability company; AURORA LYNN RIVERA, individually; and the marital community of AURORA LYNN REVERA and JOHN DOE, KIAVI FUNDING, INC., a Delaware limited liability company; SELECT PORTFOLIO SERVICING, INC., a Utah corporation; and CITIBANK, N.A. a subsidiary of CITIGROUP, INC. as trustee of COLT 2022-2 TRUST, a Delaware corporation, <br><br> Respondents. | No. 84620-5-I <br><br> DIVISION ONE <br><br> PUBLISHED OPINION |

FELDMAN, J. — Tang Real Estate Investments (Tang) appeals the dismissal of its claims against Kiavi Funding Inc. (Kiavi), Newrez LLC d/b/a Shellpoint Mortgage Servicing (Newrez), Select Portfolio Servicing, Inc. (Select Portfolio), and Citibank, N.A., as trustee of the Colt-2022-2 Trust (Citibank), each of which was involved—as a lender, assignee, or loan servicer—in two refinancing transactions wherein the designated escrow agent absconded with the escrow funds before all of the escrow conditions were satisfied. The trial court dismissed

Tang's claims against these entities because it concluded that Tang bore the risk of loss at the time of the escrow agent's defalcation of the escrow funds. Because the trial court failed to correctly apply controlling case law, we reverse.

I

Tang assigns error to the trial court's dismissal of its claims against Kiavi, Newrez, Select Portfolio, and Citibank under CR 12(b)(6). The following statement of facts therefore accepts as true the allegations of the complaint. *See*, *e.g.*, *Gorman v. City of Woodinville*, 160 Wn. App. 759, 762, 249 P.3d 1040 (2011).[1] We confine our discussion of the facts to matters alleged in the complaint, even though the parties' appellate briefing provided more detailed descriptions of the transactions at issue.

Tang is a real estate development company primarily doing business in King County and Snohomish County. At issue here are refinancing transactions for two of Tang's properties: one at 8329 44th Avenue South in Seattle and the other at 3226 102nd Place Southeast in Everett. Tang had preexisting loans for these properties from Level Capital (a party not involved in this appeal) and Kiavi, respectively.

Tang attempted to refinance both of these preexisting loans with new loans from Kiavi. For both transactions, Escrow Services of Washington (ESW) was selected for closing and escrow services including the "facilitation, holding, and exchange of funds and documents." Especially relevant here, ESW "was to make

---

[1] For purposes of this appeal, the operative complaint is Tang's First Amended Complaint for Breach of Contract, Professional Negligence, Violations of the Washington Consumer Protection Act, Chapter 19.86 RCW, and Declaratory Judgment, which is referred to herein as the "complaint."

all necessary payments to satisfy all existing liens" as a condition precedent to closing on the new loans with Kiavi. Tang's complaint further alleges that ESW "did not complete and failed to follow the detailed closing instructions of Kiavi regarding the 8329 44th Avenue South loan and the 3226 102nd Place SE loan." Instead, according to the complaint, "Upon information and belief, [Aurora Lynn Rivera (Rivera), ESW's sole escrow agent,] has utilized the funds held in trust with [ESW] for her personal benefit and interest."

After Rivera and ESW failed to follow the closing and escrow instructions, the note on one property and the loan servicing operations for both loans were transferred. For the 8329 44th Avenue South loan, Kiavi transferred the loan servicing operations to Newrez, which then transferred the operations to Select Portfolio. Tang further alleges that Select Portfolio provides loan servicing operations for this loan for Citibank, which is "the current owner of the note." For the 3226 102nd Place SE loan, Kiavi transferred the loan servicing operations to Newrez. Newrez, Select Portfolio, and Citibank are referred to herein as the "successor financial respondents."

Tang initially sued only ESW and Rivera. It then amended its complaint to add claims against Kiavi, Newrez, Select Portfolio, and Citibank. The complaint alleges claims against these four parties for breach of contract, professional negligence, and declaratory relief. Each of these claims is premised on the assertion that Kiavi and the successor financial respondents—and not Tang—bore the risk of loss of the escrow funds at the time Rivera absconded with the funds.

Kiavi and the successor financial respondents filed motions to dismiss

Tang's claims under CR 12(b)(6). A central thrust of these motions is that Tang bore the risk of loss of the escrow funds at the time Rivera absconded with the funds because, among other reasons, Tang selected ESW to provide escrow services. The trial court agreed with Kiavi and the successor financial respondents that Tang's claims against them were "legally insufficient" and granted their motions to dismiss. Tang filed a motion for reconsideration, which the trial court denied. This timely appeal followed.[2]

## II

Preliminarily, we address the proper scope of review. This analysis is required here because the trial court's order granting Kiavi's and the successor financial respondents' motions to dismiss is not designated in or attached to the notice of appeal in accordance with RAP 5.3(a). Instead, Tang designated and attached the trial court's subsequent order denying its motion for reconsideration Nonetheless, we may properly review the trial court's dismissal order under RAP 2.4(b), which states:

> The appellate court will review a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review.

---

[2] The trial court did not dismiss Tang's claims against ESW and Rivera, neither of which filed a motion seeking such relief. Rivera subsequently filed a petition for voluntary chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Washington, which automatically stays Tang's claims against Rivera. It is unclear whether this stay also extends to ESW, at least to the extent that ESW may be responsible for Rivera's malfeasance. In any event, the trial court's dismissal order did not resolve all claims against all parties. Because the trial court had not entered the necessary findings and conclusions to enter a final judgment under CR 54(b) and RAP 2.2(d), Tang's notice of appeal was treated as a notice of discretionary review, which our commissioner granted.

Given the similarity between Tang's arguments in response to the motions to dismiss and its arguments in its motion for reconsideration, the "prejudicially affects" requirement is satisfied here. We may therefore review the trial court's dismissal order under RAP 2.4(b).

The trial court dismissed Tang's claims under CR 12(b)(6). "Dismissal under CR 12(b)(6) is appropriate in those cases where the plaintiff cannot prove any set of facts consistent with the complaint that would entitle the plaintiff to relief." *Jackson v. Quality Loan Service Corp.*, 186 Wn. App. 838, 843, 347 P.3d 487 (2015). "The plaintiff's allegations and any reasonable inferences are accepted as true." *Gorman*, 160 Wn. App. at 762. However, the complaint's legal conclusions are not required to be accepted as true. *Jackson*, 186 Wn. App. at 843 (quoting *Gorman v. Garlock*, 155 Wn.2d 198, 215, 118 P.3d 311 (2005)). "If a plaintiff's claim remains legally insufficient even under his or her proffered hypothetical facts, dismissal pursuant to CR 12(b)(6) is appropriate." *Id*. at 843-44. This court reviews an order granting a motion to dismiss under CR 12(b)(6) de novo. *Id.* at 843.

Where, as here, escrow funds are embezzled prior to the closing of the escrow, the controlling legal principles are set forth in a trio of cases: *Lechner v. Halling*, 35 Wn.2d 903, 216 P.2d 179 (1950), *Lieb v. Webster*, 30 Wn.2d 43, 190 P.2d 701 (1948), and *Angell v. Ingram*, 35 Wn.2d 582, 213 P.2d 944 (1950). Our Supreme Court aptly summarized those legal principles in *Lechner*:

> [T]he rule to be applied in this type of case was laid down by this court in *Lieb v. Webster*, 30 Wash.2d 43, 190 P.2d 701. It was recently reiterated in *Angell v. Ingram*, Wash., 213 P.2d 944. In those cases, we held that, when an escrow agent absconds with money he is holding in his capacity as depositary, the loss must fall upon the person as whose agent he is holding the money at the time. Both

cases turned chiefly upon the circumstance that, in each of them, the terms of the escrow instructions given by the purchasers to the depositary had not been complied with at the time the latter absconded with the funds he was holding. Applying the rule, as above stated, we held that he was still holding the money as the agent of the purchasers, and that, as between them and the sellers, they, the purchasers, must stand the loss.

*Lechner*, 35 Wn.2d at 909-10. Although our Supreme Court decided these cases several decades ago, they remain good law.

The trial court here failed to properly apply *Lechner*, *Lieb*, and *Angell* when it granted Kiavi's motion to dismiss. In its complaint, Tang alleged that ESW "failed to satisfy Kiavi's detailed prerequisites for closing," "failed to satisfy other necessary conditions precedent," "did not complete and failed to follow the detailed closing instructions of Kiavi regarding the 8329 44th Avenue South loan and the 3226 102nd Place SE loan," and other similar allegations. Given these allegations, which we accept as true for purposes of deciding whether the trial court erred in granting Kiavi's motion to dismiss, ESW had not yet completed the applicable escrow instructions—which included satisfying the preexisting loans—and was therefore holding the escrow funds as an agent of Kiavi at the time Rivera absconded with the funds. It necessarily follows, under *Lechner*, *Lieb*, and *Angell*, that Kiavi must bear the risk of loss. The trial court thus erred in dismissing Tang's claims against Kiavi.

The trial court also erred in dismissing Tang's claims against the successor financial respondents. Our Supreme Court's opinion in *Dahlhjelm Garages, Inc. v. Mercantile Ins. Co. of America*, 149 Wash. 184, 270 P. 434 (1928), is controlling on this point. The court in *Dahlhjelm* held that where an assignee of a contract exacts and accepts payments under the contract, they thereby "assume[] the

corresponding duty to perform the conditions the contract imposed as a consideration for their payment." *Id.* at 190. Here, according to the complaint, Citibank is "the current owner of the note" for the 8329 44th Avenue South property and Newrez and Select Portfolio are responsible for loan servicing operations for one or both of the properties. It can therefore be hypothesized—as CR 12(b)(6) permits—that the successor financial respondents accepted payments under the new loans relating to the two properties and thereby assumed the risk of loss of the escrow funds under *Lechner*, *Lieb*, and *Angell*.[3]

Notwithstanding the above analysis, Kiavi argues—and the trial court agreed— that *Lechner*, *Lieb*, and *Angell* "are distinguishable because they involve conventional, two-party escrow transactions involving buyers and sellers of real property. Here . . . there is only one party to the escrow transaction—[Tang], who sought to *refinance* its prior mortgage loans." The fatal flaw in this argument is that *Lechner*, *Lieb*, and *Angell* do not distinguish between buyers and sellers, on the one hand, and borrowers and lenders, on the other. Instead, the rule set forth in *Lechner*, *Lieb*, and *Angell* is properly applied to financial transactions involving

---

[3] Though it was suggested at oral argument that Tang did not assert such hypothetical facts below (*Tang Real Estate Investments v. Escrow Services of Washington, et ano*, No. 84620-5-I (March 12, 2024), at 15 min., 13 sec. through 16 min., 50 sec.), our case law clearly holds that in determining whether a trial court erred in granting a motion to dismiss under CR 12(b)(6) "a court may consider a hypothetical situation asserted by the complaining party, not part of the formal record, *including facts alleged for the first time on appellate review* of a dismissal under the rule." *Bravo v. Dolsen Companies*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995). Our Supreme Court has explained that "Neither prejudice nor unfairness is deemed to flow from this rule, because the inquiry on a CR 12(b)(6) motion is whether any facts which would support a valid claim can be conceived." *Id.* Similarly, while it is conceivable that the applicable assignment and servicing contracts could potentially preclude assignee liability under *Dahlhjelm*, those contracts are not part of the trial court record and we must therefore accept as true Tang's allegations and "proffered hypothetical facts" that the successor financial respondents accepted payments under the new loans relating to the two properties and could, therefore, be subject to liability, along with Tang, for the loss of escrow funds under *Lechner*, *Lieb*, and *Angell*. These allegations and proffered hypothetical facts, as noted, are sufficient to preclude dismissal under CR 12(b)(6).

two innocent parties where an escrow agent embezzles funds in "those unfortunate cases in which one party or the other must sustain a heavy loss by reason of their misplaced confidence in a third party." *Lieb*, 30 Wn.2d at 50. In *Schrock v. Gillingham* 36 Wn.2d 419, 421, 219 P.2d 92 (1950), which involved similar circumstances, our Supreme Court likewise recognized that the purchaser there was liable "not because he was the purchaser but because he had executed escrow instructions directing the third party not to deliver the money to the seller until certain conditions had been performed by the seller." The Supreme Court's analysis in these cases is broad enough to encompass the refinancing transactions at issue here.

Nor is there any compelling reason to treat the refinancing transactions at issue here differently from the transactions at issue in *Lechner*, *Lieb*, and *Angell* where, in all such cases, an escrow agent embezzles funds prior to closing. Thus, in *Ward Cook, Inc. v. Davenport*, 243 Or. 301, 308-09, 413 P.2d 387 (1966), the Oregon Supreme Court remarked: "This case is different from any cited by the parties or that we have been able to find in that in addition to a buyer and seller of property, a lender of money was a party to the escrow. We assume, however, that the basic principles above stated apply." Significantly, neither Kiavi nor Tang has cited a case to the contrary, so we may properly assume that no such case exists. *See Seattle Bulk Shipping, Inc. v. Dep't of Labor & Indus.*, 25 Wn. App. 2d 762, 778, 524 P.3d 733 (2023) ("Where no authorities are cited in support of a proposition, we are not required to search out authorities but may assume that counsel, after a diligent search, has found none."). For these reasons, we reject

Kiavi's and the successor financial respondents' argument that *Lechner*, *Lieb*, and *Angell* are not controlling here.

Next, Kiavi and the successor financial respondents argue that Tang must bear the risk of loss because it selected ESW and entrusted it with the escrow funds, which enabled it to perpetrate the wrong at issue. *Angell* is controlling on this point. In *Angell*, Ingram agreed to purchase Angell's residence, and Angell then hired Webster, an escrow agent, to facilitate the sale of the property. 35 Wn.2d at 586. Although Angell selected and retained Webster, our Supreme Court held that the risk of loss rested with Ingram because Webster held the escrow funds as Ingram's agent when he absconded with the money. *Id.* at 586. As *Angell* confirms, Tang's selection of ESW to provide escrow services for the refinancing transactions at issue here is immaterial to our analysis.[4]

Lastly, because we hold the trial court erred in granting the motions to dismiss, we need not address Tang's further argument that the trial court abused its discretion when it dismissed Tang's claims without granting leave to amend the complaint to add claims for unjust enrichment and contract rescission. *See Alim v. City of Seattle*, 14 Wn. App. 2d 838, 844, n.3, 474 P.3d 589 (2020) ("Because we reverse the trial court's order dismissing this action, we do not reach these

---

[4] Newrez additionally argues that it "should not bear any liability for the Escrow Defendants' defalcation/absconding of the escrow funds because its role is too attenuated." The current record, consisting solely of the complaint, does not support Newrez's argument. Nor is there any allegation or reason to conclude that Tang "knew of, consented to, or approved of" ESW's and/or Rivera's malfeasance, which would preclude application of the legal principle set forth in *Lechner*, *Lieb*, and *Angell*. *See Angell*, 35 Wn.2d at 586. Here too, we express no opinion as to whether these or any other arguments might succeed if and when supported by admissible evidence in subsequent motion practice or at trial.

issues and leave it to the parties and the trial court to address any properly noted motion to amend the complaint.").

Reversed.

Feldman, J.

WE CONCUR:

Hazelrigg, A.C.J.

Mann, J.