IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PERFORMANCE CONTRACTING, INC., | ) ) ) | No. 32377-3-III |
| Appellant, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) ) | |
| Respondent. | ) ) | |

SIDDOWAY, C.J. — Lincoln County Superior Court dismissed Performance

Contracting Inc.'s attempted appeal of a decision of the Board of Industrial Insurance

Appeals after the court found that the company's notice of appeal was untimely served on

the director of the Department of Labor and Industries. It is undisputed that the company

filed its notice well within the deadline for appeal, accompanied by a certificate that the

notice had been mailed to the department at the same time. But the department

disclaimed receipt of the notice, as did another intended recipient. After reviewing a

number of sworn statements submitted by the parties and weighing the likelihood of the

parties' competing theories as to what went wrong with service, the trial court reluctantly

dismissed the appeal.

Performance Contracting assigns error to the dismissal on a number of grounds, but we find persuasive only its argument that the parties' dispute over perfection of the appeal should not have been resolved summarily. While a motion is ordinarily heard on affidavits, it may be heard wholly or in part on oral testimony. Where, as here, a substantial right is at stake; both sides can point to material evidence and argument in support of their theory of what happened; competing improbabilities, if equal, will be resolved based on the burden of proof; and oral testimony could assist the superior court in assessing credibility, it was an abuse of discretion to deny Performance Contracting's request that the court resolve the dispute by trial. We reverse the trial court's order dismissing the appeal and remand.

## FACTS AND PROCEDURAL BACKGROUND

The Department of Labor and Industries charged Performance Contracting Inc. with a serious violation of the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW. The company petitioned the Board of Industrial Insurance Appeals to review the citation. On August 14, 2013, the board issued an order denying the petition and affirming the citation.

The company appealed the board's order to Lincoln County Superior Court. A company representative testified that Performance Contracting strives to comply with safety laws and regulations, in part because

2

> [e]ven when the monetary penalty is relatively small, the effect of a serious violation can be substantial. Many federal and state construction projects, and increasingly projects of sophisticated private owners, often prequalify and limit bidders to those with minimal or zero safety violations over a period of a few years preceding the bidding opportunity. Thus, even one serious safety violation can have a detrimental effect on PCI's [(Performance Contracting)] ability to bid and compete for such contracts.

Clerk's Papers (CP) at 269. In appealing to the superior court, the Ohio lawyers who had represented the company in proceedings before the board associated a Seattle law firm.

To perfect its appeal, the company was required to file a notice of appeal with the superior court within 30 days of the board's order denying review and to serve notice on both the board and the director of the department. RCW 49.17.150(1).

According to declarations thereafter filed with the court, one of the company's Ohio lawyers prepared a draft notice of appeal and a motion for the limited admission (pro hac vice) of Gary Auman, the lead Ohio lawyer, on or before Tuesday, September 3—almost two weeks before the September 16 deadline for appeal. Mr. Auman signed the certification for limited admission in Dayton, Ohio, on September 3. Robert Olson, the lead Seattle lawyer, signed both the notice of appeal and the motion for limited admission on September 4.

The certificates of service appended to the notice of appeal and the motion for limited admission state that Laurel Barton, an assistant with the Seattle law firm, "arranged for service of true and correct copies" of the notice, motion, and proposed order "via first class mail" to the board, the department, the department's lawyer, and the

3

company's Ohio lawyer on September 5. CP at 24-25, 248. The Lincoln County Superior Court clerk received her copy of the materials (which had been sent to her by priority mail) on Monday, September 9. The court granted the order for limited admission on September 16.

On October 17, one of the company's Ohio lawyers called the board's office to find out why the certified board record had not yet been filed with the court. He was told that the board had not received the notice of appeal. He promptly faxed a duplicate copy of the notice of appeal to the board.

The next day, the executive secretary of the board sent a letter to Mr. Auman acknowledging receipt of the notice of appeal and stating, "The Certified Appeal Board Record will be sent to the court and parties." CP at 197. A notation below the signature block suggests that copies of the letter were sent to the department, the Office of the Attorney General, and others.[1]

Two weeks later, on November 4, the assistant attorney general who had represented the department before the board e-mailed Performance Contracting's Ohio

---

[1] Below the executive secretary's signature, the following appears:

c:    Local 82
Int'l Union of Painters & Allied Trades Local 427
Office of the Attorney General
DLI- Wisha PO 4604
Steve Gossman

CP at 197.

4

lawyers, stating, "I hate to be the bearer of bad news but there appears to be a problem with your appeal." CP at 232. After recounting that he had confirmed filing with the Lincoln County court, the assistant attorney general reported having determined that neither the board, the department, nor his office had received copies of the notice of appeal. His e-mail stated that the department would file a motion to dismiss the appeal because service on the department was not timely.

On November 7, Performance Contracting's Seattle lawyers mailed what they characterized by cover letter as "another copy" of the company's notice of appeal to the board, the department, and the attorney general. CP at 259. This time, they sent the copies by certified mail with return receipt requested.

The certified record of proceedings before the board was filed with Lincoln County Superior Court on November 25.

On December 11, the department moved to dismiss Performance Contracting's appeal on account of its alleged failure to timely serve the notice of appeal on the department. It supported its motion with two affidavits: the affidavit of a legal assistant for the board stating that the board did not receive a notice of appeal until October 17, and the affidavit of an employee of the department stating that as of November 4, 2013, no notice of appeal had been received by the department. It submitted the unsworn e-mail that the assistant attorney general sent to the company's Ohio lawyers in November stating that his office had not received the materials allegedly sent on September 5.

5

The company responded with a number of declarations, including declarations from Mr. Olson, Ms. Barton, and the Seattle law firm's office administrator and receptionist.

Mr. Olson testified in his declaration that he had practiced law in Washington since 1974; that he had concentrated his practice on construction disputes and litigation matters of all types; that he was experienced in handling WISHA matters and was knowledgeable about the procedures for appealing WISHA citations; and that his legal assistant, Laurel Barton, was also familiar with WISHA matters. He testified that he had finished the notice of appeal and motion on September 4, worked with Ms. Barton the next day to arrange for filing and service, and was satisfied based on his discussions with Ms. Barton on September 5 that the materials had been sent to the court and the required parties. He testified to a specific recollection of Ms. Barton dispatching the materials on that date because he was planning to be out of the office the next day (Friday), would be embarking on an extended vacation the following Monday, and wanted to be sure that the filing and service was completed.

The office administrator of the Seattle firm, Gwen Crosswhite, testified by declaration that the firm had established and "rigorously followed" procedures for its legal assistants' preparation and mailing of service copies of documents. CP at 237. She testified that the practice involves "placing the documents in the envelopes with certificates of mailing . . . , properly addressing and sealing the envelopes, applying the

6

proper amount of postage to the envelopes . . . [,] and placing the completed envelopes in the 'out' basket in our mail room." *Id.* She testified that the mail in the "out" basket is picked up at 4:30 p.m. daily by the firm's receptionist, who then delivers it to a nearby post office before 5:00 p.m. She testified to Ms. Barton's 13 years' experience as a legal assistant with the firm, Ms. Barton's consistently excellent annual performance reviews, and the fact that Ms. Barton had never been reprimanded or sanctioned for any performance deficiency. Ms. Crosswhite testified that while the firm's receptionist in September 2013, Shontara Anderson, had been employed for only a few months, she had been instructed on her duties and responsibilities and had been a reliable employee with an excellent attendance record. Ms. Crosswhite testified that she had reviewed Ms. Anderson's time records and confirmed that Ms. Anderson had worked a full day of 7.5 hours (from 8:30 a.m. to 5:00 p.m.) on September 5.

Laurel Barton testified in her declaration that she had a specific recollection of preparing envelopes for service of the notice of appeal in this matter on September 5 because Mr. Olson intended to be out of the office the following day and wanted service completed before he left. She testified that she typed the notice of appeal for Mr. Olson. The notice of appeal was relatively lengthy (six pages), including assignments of error. It also included the following recitals:

> 2.    As required under RCW 49.17.150(1), PCI is serving a copy of this
>        Notice of Appeal on the Director of the Department and on the
>        Board, as well as the Office of the Attorney General.

3. The filing and service of this Notice of Appeal are timely because they have been accomplished within 30 days following the communication of the Board's August 14, 2013, Final Order, as required under RCW 49.17.150(1).

CP at 2. Ms. Barton testified that she prepared the certificates of service on September 5; prepared envelopes addressed as indicated by the certificates; prepared copies of all materials filed with the court, both for her file and for service copies; placed copies of the notice of appeal, motion for limited admission, and certificate of service in the envelope for each recipient identified on the certificate of service; affixed the proper postage; and placed the service copies in the mail basket in the firm's copy room for pickup and mailing by Ms. Anderson.

Finally, the declaration of Ms. Anderson stated in relevant part:

> My usual and customary practice that does not vary and which is in accordance with the firm's policy is to check the mail basket in our copy room at the close of business each work day (4:30 pm), collect all of the letters in the basket, put them into a mail pouch and drive them to the post office located just a few blocks from our office at 2420 4th Ave S., Seattle. Before I deposit the envelopes into the mail slot which is located inside the front door of the post office, I check each envelope to verify that it has a complete address and postage. I then deposit the envelopes into the mail slot. . . .
>
>  . . . .
>  . . . I have determined that I worked on September 5, 2013 based on my own recollection and verified by the time sheet that I complete for each day worked. . . . Although I have no specific recollection of taking the actions I described above on September 5, 2013, there is no reason for me to believe that I varied my practice on that day. I have never failed to mail all envelopes I picked up from the firm's mail basket and delivered to the [United States] post office.

8

CP at 264-65.

At the conclusion of the hearing on the department's motion, having been told by the assistant attorney general that even Mr. Auman did not receive his copy of the materials allegedly sent on September 5,[2] the trial court explained that it felt constrained to grant the motion despite evidence of the law firm's procedures and safeguards because it seemed "astronomically unlikely" that service copies were mailed to the four intended recipients and yet none received a copy. Report of Proceedings at 28. It added, "[If] the Court of Appeals overrules me on that, great, I'd be glad to hear the case. I just don't think I have authority to go further." *Id.*

Performance Contracting filed a motion for reconsideration. Among other grounds, it argued that the court erred when it resolved the motion as a matter of summary judgment yet construed the evidence and inferences in the light most favorable to the moving party, the department. The company supported its motion with a declaration attaching seven news reports of unrelated mail that had been lost, stolen, or destroyed before it could be delivered; six of the reports were from 2013 or 2014. The company contended that given its declarations establishing that the notice was mailed to the department, "there is no way that reasonable persons could reach *only* the conclusions

---

[2] Mr. Olson acknowledged to the court that he believed that to be true. Report of Proceedings at 12.

9

that [Performance Contracting] failed to deposit the mail at the post office." CP at 285 (emphasis added).

The department responded with argument that "[t]he odds of the United States Postal Service (USPS) failing to mail these four envelopes are beyond reasonable assumption." CP at 308. It had offered no evidence as to the odds of mail being lost or destroyed after delivery to the postal service or the relative odds of mail being lost or destroyed singularly or in batches.

The court denied the motion for reconsideration. As to the factual dispute relied on by the company, the court concluded that "[w]ithout any evidence being presented that any of the many thousands of other mailings that were mailed out on September 5, 2013 from this post office also did not reach the intended recipients causes this court to conclude that neither the Director nor the Board was actually mailed the Notice of Appeal to begin the appeal process." CP at 312.

## ANALYSIS

The company assigns error both to the trial court's granting of the department's motion and to its denial of the company's motion for reconsideration. It identifies several issues in connection with each. We need address only four.

We reject the company's arguments that it established actual compliance or substantial compliance with the perfection requirements and reject its argument that the trial court should have applied principles of equity in order to reach the merits of the

appeal. But we agree with the company that given the substantial interest at stake and the conflicting but considerable evidence presented by both sides, the trial court abused its discretion by rejecting the company's request that it resolve the service issue by trial. We address the four issues in turn.

### I. *The company did not establish actual compliance with perfection requirements*

When the department cites an employer for violating WISHA or a safety or health standard promulgated by rule, the employer may file an appeal with the board. RCW 49.17.140. Following an unsuccessful appeal to the board, an aggrieved employer "may obtain a review . . . in the superior court for the county in which the violation is alleged to have occurred, by filing in such court within thirty days following the communication of the board's order . . . a written notice of appeal." RCW 49.17.150(1). The statute further provides:

> Such appeal shall be perfected by filing with the clerk of the court and by serving a copy thereof by mail, or personally, on the director and on the board. The board shall thereupon transmit a copy of the notice of appeal to all parties who participated in proceedings before the board, and shall file in the court the complete record of the proceedings.

*Id.*

The statute does not explicitly require that copies of the notice be served on the director and the board within 30 days—it explicitly requires only that the notice be filed with the court within that timeframe. But a virtually identical statute, RCW 51.52.110,

11

has been construed to require both filing and service within 30 days.[3] *Hernandez v. Dep't of Labor & Indus.*, 107 Wn. App. 190, 196, 26 P.3d 977 (2001) (citing *Fay v. Nw. Airlines, Inc.*, 115 Wn.2d 194, 198, 796 P.2d 412 (1990)). While the provision in *Hernandez* governs perfection of an appeal from a final order addressing a workers' compensation claim, both workers' compensation claims and work safety violations are matters committed to the administrative jurisdiction of the board.

To "perfect" means "[t]o take all legal steps needed to complete, secure, or record (a claim, right, or interest)." BLACK'S LAW DICTIONARY 1318 (10th ed. 2014). "An appeal is taken or perfected when the act or acts contemplated by the applicable statutes have been done, typically by some form of application made or notice given to the court from which or to which the appeal is taken." 4 C.J.S. *Appeal and Error* § 389 (2007).

"The construction of two statutes shall be made with the assumption that the Legislature does not intend to create an inconsistency," and "[s]tatutes are to be read together, whenever possible, to achieve a 'harmonious total statutory scheme.'" *State ex rel. Peninsula Neigh. Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000) (internal quotation marks omitted) (quoting *Employco Pers. Servs., Inc. v. City of Seattle*,

---

[3] *Compare* RCW 49.17.150(1) ("Such appeal shall be perfected by filing with the clerk of the court and by serving a copy thereof by mail, or personally, on the director and on the board."), *with* RCW 51.52.110 ("Such appeal shall be perfected by filing with the clerk of the court a notice of appeal and by serving a copy thereof by mail, or personally, on the director and on the board.").

117 Wn.2d 606, 614, 817 P.2d 1373 (1991)). Given the identical purposes of RCW 49.17.150 and RCW 51.52.110 (identifying the procedure for perfecting an appeal), their virtually identical language, and the concept of perfection, we construe RCW 49.17.150(1) to require service of notice on the department and the board within 30 days of the final order of the board.

Performance Contracting nonetheless argues that it established its compliance with the perfection requirements. It relies on the propositions that RCW 49.17.150(1) authorizes service by mail; that proof of mailing may be established by the testimony of a person with firsthand knowledge of mailing or testimony to a reliable office practice for mailing and compliance with the custom; that service requires only and is effective upon mailing, not receipt; and that to refute competent evidence that notice was given by mailing, a party claiming nonreceipt must do more than simply swear that the notice never arrived.

The department does not dispute that service by mail is authorized or that service is effective if the notice is mailed, whether or not the notice is received. Its disagreement is with the company's other two premises: it disputes that the declarations of employees of the company's law firms were sufficient to give rise to the presumption of service and contends that it offered more than its own self-serving claim that notice never arrived.

13

## A. Sufficiency of law firm staff declarations

It is well established that "'when an office handles such a large volume of mail that no one could be expected to remember any particular letter or notice, proof of mailing may be made by showing (1) an office custom with respect to mailing, and (2) compliance with the custom in the specific instance.'" *Automat Co. v. Yakima County*, 6 Wn. App. 991, 995, 497 P.2d 617 (1972) (quoting *Matsko v. Dally*, 49 Wn.2d 370, 376, 301 P.2d 1074 (1956)); *Farrow v. Dep't of Labor & Indus.*, 179 Wash. 453, 455, 38 P.2d 240 (1934). Proof of mailing gives rise to a presumption that the mail was received. *Avgerinion v. First Guar. Bank*, 142 Wash. 73, 78, 252 P. 535 (1927).

The department unpersuasively argues that the presumption does not apply in this case. It points to the fact that both Ms. Barton and Mr. Olson *did* specifically recall Performance Contracting's notice and motion, which it argues means that "the law firm does not have so much mail that it cannot remember the specific documents at issue in this case." Br. of Resp't at 12. From that, it argues that Ms. Anderson's declaration, which relies on an office custom and compliance, was insufficient.

Ms. Barton and Mr. Olson had firsthand involvement in the preparation of case-specific documents and explained the circumstances that caused them to remember the documents they finalized and prepared for mailing on September 5. Ms. Anderson's contact with the letters, by contrast, was that they would have been 4 of approximately 25 letters that she put in a mail pouch on September 5 and then checked for a complete

14

address and postage before dropping them in the mail slot at the post office. By extension, they would have been 4 of an estimated 125 she mailed in that fashion in a given week, and 4 of the more than 500 she was likely to take to the post office in a given month. It is frivolous to contend that Ms. Anderson should specifically recall the 4 letters.

The law firm declarations were sufficient to give rise to the presumption that the notice of appeal was mailed to the department and the board on September 5.

> B. *The department offered more rebuttal evidence than its own self-serving claim of nonreceipt*

Performance Contracting cites *Washington Federal Savings v. Klein*, 177 Wn. App. 22, 311 P.3d 53 (2013), *review denied*, 179 Wn.2d 1019 (2014), as establishing that the mere denials of receipt offered as evidence by the department are insufficient to rebut the presumption of mailing. In *Klein*, Washington Federal argued that its claim against the estate of a decedent was not time barred because the bank never received a notice from the estate's personal representative demanding that creditors file claims within a statutory time frame.

The fact that the notice to creditors in *Klein* had been mailed was supported by a contemporaneous affidavit of mailing signed by a legal assistant to the estate's attorney, just as Ms. Barton's contemporaneous certificate supports the fact of mailing here. Washington Federal responded with the affidavits of two employees "stating that the

documents were never received and detailing the careful procedures that have been put in place to ensure that mail does not get lost." *Id.* at 28. The appellate court held that in the battle of the competing sworn statements, the certificate of service prevailed:

> [W]hen a legal assistant declares that she has 'given, or caused to have given' a creditor actual notice by mailing, it is reasonable to accept her statement as prima facie proof of mailing. To refute such a declaration, a creditor must do more than swear that the mail never arrived.

*Id.* at 31.

Had the department produced only the affidavit of its own employee denying receipt, its refutation would have been insufficient. But it produced more: it produced the affidavit of an employee of the board denying receipt. And while the unsworn e-mail of the assistant attorney general did not comply with CR 56(e), Performance Contracting made no motion to strike it—understandably, since a sworn statement presumably could have been substituted. Since Ms. Barton's certificate of service stated that service copies were prepared and mailed to four intended recipients, the testimony of others denying receipt distinguishes this case from *Klein*. The department's evidence was sufficient to require weighing by the court.

16

## II.    *The company did not establish substantial compliance with service requirements*

Performance Contracting argues alternatively that if its evidence of mailing on September 5 is insufficient, then the other steps it took amount to substantial compliance with the statutory perfection requirements. Substantial compliance is sufficient to invoke appellate jurisdiction of the superior court. *Fay*, 115 Wn.2d at 198-99 (citing *In re Saltis*, 94 Wn.2d 889, 621 P.2d 716 (1980)). "Substantial compliance occurs when the Director of the Department (1) receives actual notice of the appeal to the superior court *or* (2) the notice of appeal *was served* in a manner reasonably calculated to give notice to the Director." *Petta v. Dep't of Labor & Indus.*, 68 Wn. App. 406, 409, 842 P.2d 1006 (1992) (citing *Saltis*, 94 Wn.2d at 896).

Placing envelopes in the mail within the statutory 30 day deadline has been held to constitute substantial compliance even if the envelopes are received after the expiration of the 30 day deadline. *Vasquez v. Dep't of Labor & Indus.*, 44 Wn. App. 379, 382-83, 722 P.2d 854 (1986). But failure to serve a required party until well after the 30 day deadline has been held not to amount to substantial compliance. In *Fay*, a pro se plaintiff appealed a decision from the board, timely filed her notice of appeal with the court and properly served the board and the adverse party, but failed to serve the director of the

department.[4] *Fay*, 115 Wn.2d at 196. She served the director two months late, immediately after the adverse party filed a motion to dismiss. *Id.* The Supreme Court affirmed the trial court's dismissal of the appeal, holding that the standard for substantial compliance was not met because the department did not receive actual notice until after the expiration of 30 days, and by mailing notice two months after the deadline the appellant "did not serve notice in a manner reasonably calculated to give notice to the Director." *Id.* at 199.

*Fay*, with its virtually identical facts as to notice to the department, is controlling. Assuming notice to the department was not mailed by Performance Contracting's lawyers on September 5, the other steps that it took do not amount to substantial compliance with the perfection requirements.

### III. Public policy and principles of equity cannot displace the statutory perfection requirements

Performance Contracting next argues that even if its appeal was not timely perfected, an overriding policy in favor of resolving disputes on their merits mandates that we remand the matter for a determination on the merits, particularly because the department learned of the appeal in October, the certified record was completed and filed by November, and no prejudice can be shown. The company fails to cite relevant

---

[4] *Fay* involved appeal of a workers' compensation decision and the perfection requirements of RCW 51.52.110, which we have noted are virtually identical to the perfection requirements of RCW 49.17.150(1). *See supra* note 3.

authority in support of its argument. The case it does cite, *Showalter v. Wild Oats*, 124 Wn. App. 506, 101 P.3d 867 (2004), involves the unique factors reviewed where a party seeks to vacate a default judgment.

"Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Applicable law already favors resolving issues on the merits by requiring only proof of service rather than proof of receipt, by treating a sworn certificate of mailing as giving rise to a presumption of service, and by treating substantial compliance with perfection requirements as sufficient. It is the province of the legislature to dictate the steps required to perfect an appeal. We are bound to require substantial compliance with RCW 49.17.150(1).

> *IV.     The trial court abused its discretion in denying the*
> *company's request, in moving for reconsideration, that the*
> *dispute over service be resolved by trial*

Finally, the company contends that the trial court erred in denying its motion for reconsideration. Its motion urged three grounds for reconsideration. We find only one persuasive: the order of dismissal was contrary to procedural law.

By bringing a motion for reconsideration under CR 59, a party may preserve an issue for appeal that is closely related to a position previously asserted and does not depend on new facts. *River House Dev., Inc. v. Integrus Architecture, PS*, 167 Wn. App.

19

221, 231, 272 P.3d 289 (2012) (citing *Newcomer v. Masini*, 45 Wn. App. 284, 287, 724 P.2d 1122 (1986); *Reitz v. Knight*, 62 Wn. App. 575, 581 n.4, 814 P.2d 1212 (1991)). We review a trial court's denial of a motion for reconsideration for abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 684-85, 41 P.3d 1175 (2002).

A motion is ordinarily heard on affidavits, but CR 43(e)(1) provides that it may be heard wholly or in part on oral testimony. Threshold issues arising in litigation that are often resolved on affidavits may nonetheless call for testimony where there is clearly conflicting evidence. Thus, testimony has been called for where a motion to set aside a default judgment results in conflicting affidavits as to personal service, *Woodruff v. Spence*, 76 Wn. App. 207, 210, 883 P.2d 936 (1994); where a party disputes having received and acceded to an agreement to arbitrate future disputes, *Newson v. Macy's Dep't Stores, Inc.*, 160 Wn. App. 786, 795-96, 249 P.3d 1054 (2011); and where a motion for prejudgment attachment results in conflicting affidavits as to the validity of a creditor's claim, *Rogoski v. Hammond*, 9 Wn. App. 500, 508, 513 P.2d 285 (1973). *Cf. Stoulil v. Edwin A. Epstein, Jr., Operating Co.*, 101 Wn. App. 294, 298 n.7, 3 P.3d 764 (2000) (where a motion for a new trial raises disputed facts, a court errs by vacating the judgment without hearing testimony). A court may abuse its discretion by failing to hold

an evidentiary hearing when affidavits present an issue of fact whose resolution requires a determination of witness credibility. *Woodruff*, 76 Wn. App. at 210.

In this case, the evidence before the court suggested two scenarios—both of them were improbable, yet one evidently occurred. It was improbable that four letters were mailed but went astray. But it was also improbable that the law firm did *not* mail the notices. Several individuals had invested considerable work in preparing the documents, which were not simple; the documents themselves recite and reflect the perfection requirements, so the firm's employees clearly were aware of them; some copying and mailing was unquestionably done on or about September 5 since copies were received by the superior court on September 9; and almost two weeks remained before the deadline for appeal, so an end-of-day crunch could not explain a service problem. Why would the service copies *not* have been mailed?

The court expressed concern that there was no evidence that "the many thousands of other mailings that were mailed out on September 5, 2013 from this post office also did not reach the intended recipients," and appears to have held the absence of such evidence against Performance Contracting. CP at 312. It is not clear how Performance Contracting could have obtained proof of a postal service problem, but more importantly it is only in limited circumstances that a party's failure to produce evidence can be held against it. The postal service was a stranger to both parties in this case, and its evidence was "equally within the call" of the department; under such circumstances, the absence of

21

evidence cannot be held against Performance Contracting. *Rosenstrom v. N. Bend Stage Line*, 154 Wash. 57, 65, 280 P. 932 (1929); *Wright v. Safeway Stores*, 7 Wn.2d 341, 348, 109 P.2d 542 (1941).

Evidence must afford a *rational* basis for resolving a dispute over the cause of an event, otherwise the decision is based on impermissible conjecture or speculation. *Cf. Ewer v. Goodyear Tire & Rubber Co.*, 4 Wn. App. 152, 158 n.4, 480 P.2d 260 (1971) (conflicting evidence as to cause of accident); *St. Germain v. Potlatch Lumber Co.*, 76 Wash. 102, 109, 135 P. 804 (1913) (the evidence must "afford[] room for men of *reasonable minds* to conclude" that there is a greater probability that an event happened in one way rather than another). The trial court had before it no evidence of the relative likelihood that a postal service error results in the loss of a single piece of mail as opposed to a batch of mail. A court is entitled to conclude that there is a greater probability of one explanation than the other, but its conclusion must have a rational basis and not be a matter of conjecture or speculation. If, on the other hand, the evidence as to a factual issue is evenly balanced, then the party with the burden of persuasion (here, the department) loses. *E.g., Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 486, 40 P.3d 1221 (2002); *Chase v. Beard*, 55 Wn.2d 58, 64-65, 346 P.2d 315 (1959), *overruled on other grounds by In re Marriage of Brown*, 100 Wn.2d 729, 675 P.2d 1207 (1984).

Given the amount of evidence offered by both parties and the significant right at stake, it was an abuse of discretion for the trial court to deny Performance Contracting's

22

request for trial of the perfection issue. Oral testimony may assist the court in assessing credibility and could affect its weighing of the parties' evidence.

Whether to try the dispute over perfection first or combine it with the appeal is a matter we leave to the discretion of the trial court.

We reverse the trial court's order dismissing the appeal and remand for proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Lawrence-Berrey, J.